Filed 2/18/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| STEFANI CONCEPCION et al., | B247832 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC454990) |
| v. | |
| AMSCAN HOLDINGS, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kenneth R. Freeman, Judge. Reversed and remanded.

Fox Rothschild, David F. Faustman, Cristina K. Armstrong and Tyreen G. Torner, for Defendants and Appellants, Amscan Holdings, Inc., Party City Corporation and P.A. Acquisition Corporation.

Stonebarger Law, Gene J. Stonebarger, Richard D. Lambert, Elaine W. Yan; Patterson Law Group, and James R. Patterson, for Plaintiffs and Respondents, Stefani Concepcion et al.

_____

Amscan Holdings, Inc. Party City Corporation and P.A. Acquisition Corporation (collectively Party City) appeal from the trial court's order awarding $350,000 in attorney fees and costs to class counsel after approving a settlement of coordinated cases alleging Party City had violated the Song-Beverly Credit Card Act of 1971 (Civ. Code, § 1747 et seq.). The settlement provided for distribution of $300,000 in merchandise certificates to individuals who had used a credit card to purchase any item from a Party City store in California between February 10, 2010 and March 11, 2010 and whose ZIP Code was requested and recorded as part of the transaction.

Party City contends class counsel failed to submit sufficient evidence to justify the fee award and, in particular, did not demonstrate the time expended by the six law firms involved was reasonably necessary and nonduplicative. Party City also argues the trial court's in camera review of class counsel's billing records to support the award was fundamentally unfair and denied it due process. We agree it was improper for the court to rely upon billing information not provided to Party City and which Party City had no opportunity to challenge. We reverse the fee and cost award and remand the matter for a new fee hearing at which class counsel presents, and the trial court considers, only evidence made available to Party City.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Class Action Complaints, Mediation and Settlement*

Civil Code section 1747.08 (section 1747.08) prohibits retailers from requesting or requiring as a condition of accepting a credit card as payment that the cardholder provide "personal identification information" that is then recorded on the credit card form or otherwise. In *Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 527-528, the Supreme Court held a ZIP Code constitutes "personal identification information" as that phrase is used in section 1747.08 and requesting and recording a cardholder's ZIP Code during a credit card transaction is unlawful even if no other information is provided.

The opinion in *Pineda v. Williams-Sonoma Stores, Inc.* was issued on February 10, 2011. On the following court day an eight-page, single-cause-of-action complaint was filed in Los Angeles Superior Court initiating *Montion-Garcia v. Party City Corporation* (Super. Ct. L.A. County, BC454990), a putative class action alleging Party City had violated section 1747.08 by routinely requiring customers to provide ZIP Code information to complete credit card purchases. The proposed class consisted of all individuals in California who had used a credit card for the payment of goods purchased from Party City during the one-year period prior to the filing of the complaint.

Two days later *Hernandez v. Party City Corporation* was filed in San Diego County Superior Court with substantially similar allegations in a 10-page, single-cause-of-action complaint on behalf of a similarly defined statewide class. The following week *Concepcion v. Amscan Holdings, Inc.* was filed in Placer County Superior Court containing the same basic allegations, class definition and single cause of action for violation of section 1747.08.[1] A parallel federal class action lawsuit was filed the same week in the United States District Court for the Central District of California, *Landeros v. Party City Corporation*, CV11-01636 DMG (FFMx). The final complaint, *Shughrou v. Amscan Holdings, Inc.*, was filed several months later, also in Placer County.

Party City demurred in both *Hernandez* and *Concepcion*, seeking to abate the actions on the ground another, earlier filed action (*Montion-Garcia*) was pending and also sought to dismiss or stay the federal action. On June 2, 2011 the district court ruled the federal case should proceed. On June 11, 2011 the initial three state court cases were coordinated in Los Angeles County Superior Court (JCCP 4678), and Party City withdrew its demurrers. On December 13, 2011 *Shughrou v. Amscan Holdings, Inc.* was joined as an add-on case to the coordinated action.

No formal discovery was conducted in the state actions prior to their settlement. However, Party City made available to class counsel the written discovery produced in

---

[1]     Counsel for plaintiff in *Concepcion*, Gene J. Stonebarger, had represented the putative class in *Pineda v. Williams-Sonoma Stores, Inc., supra,* 51 Cal.4th 524.

3

the federal action pursuant to rule 26 of the Federal Rules of Civil Procedure. No class certification motions were filed.

A one-day mediation was conducted on January 23, 2012. One mediation brief was submitted on behalf of all plaintiffs in the four coordinated state actions and the related federal case. With the assistance of the mediator the parties reached a tentative class-wide settlement.

Party City provided an initial draft of the settlement agreement; the parties negotiated revised language; and plaintiffs filed an unopposed motion for preliminary approval of class settlement on May 11, 2012. The agreement defined the settlement class as all persons who had purchased merchandise from Party City stores in California using a credit card between February 14, 2010 and March 11, 2010 and whose personal information, including but not limited to a ZIP Code, was requested and recorded in connection with the credit card transaction. During this period Party City engaged in approximately 68,135 credit card transactions. (The agreement explained that Party City discontinued collection of ZIP Codes in early 2010, did not combine the ZIP Codes with any other information about the customer and did not use the ZIP Codes to obtain additional information about the customer.) The agreement provided that settlement class members who submitted a valid claim would receive a merchandise certificate (not a gift card) for up to $20.00 off a single purchase with no minimum purchase required. Party City agreed to issue a total of $300,000 in certificates[2] and to bear all costs of providing class notice, as well as all costs associated with the administration of the settlement agreement. (The parties subsequently clarified that administration fees, attorney fees and costs are separate and independent of the $300,000 award to the class.)

The parties agreed the court could make an incentive award to each of the class representatives of $3,500. However, no agreement was reached as to the amount of

---

[2]    If less than $300,000 was claimed by class members, Party City agreed to print additional merchandise certificates at the bottom of purchase receipts until a total of $300,000 in certificates had been distributed.

4

attorney fees and costs to be recovered by class counsel. The settlement agreement provided, "The parties have met and conferred through arms-length negotiations and agreed that Class Counsel shall be entitled to an award of attorneys' fees and that Class Counsel shall file a motion with the JCCP Court for attorneys' fees, and Defendant will have the opportunity to oppose the motion as to the amount of attorneys' fees sought."

The trial court preliminarily approved the class settlement on October 19, 2012. The order set a final approval hearing for January 22, 2013.

2. *The Motion for Attorney Fees, Costs and Incentive Awards*

On December 21, 2012 class counsel filed a motion for attorney fees and costs, as well as incentive awards to the representative plaintiffs of $3,500, with a hearing date of January 22, 2013. The motion sought fees under both the terms of the settlement agreement and the private attorney general doctrine codified in Code of Civil Procedure section 1021.5.[3]

Class counsel requested an aggregate award of attorney fees and costs of $350,000. Their moving papers, including declarations from attorneys at each of the law firms representing plaintiffs in the five lawsuits that had been filed, reflected a total of 720 hours in prosecuting the action to date. The amount of the award was based on the lodestar method—the time spent multiplied by the reasonable hourly compensation for the attorney involved—without an additional multiplier. The hourly rates claimed ranged from $700 per hour for one of the most experienced partners to $350 per hour for several associates. (An hourly rate was included for each lawyer.) Costs incurred through the date of the motion totaled $20,735.66.

In his declaration Gene J. Stonebarger of Stonebarger Law, APC, counsel for Concepcion, used nine general categories to organize and describe the total 159.1 hours of work performed by him and two associates. Mr. Stonebarger stated he had personally spent 131.4 hours at the rate of $650 per hour; one associate had spent 15.8 hours at the

_____

[3]     While the parties were disputing the amount of attorney fees and costs, an unopposed motion seeking final approval of the settlement was also filed.

rate of $500 per hour; and a second associate had spent 11.9 hours at the rate of $350 per hour.[4]

Mark Van Buskirk on behalf of Westrup Klick, LLP, counsel for Montion-Garcia, testified his firm had spent a total of 109.7 hours on the cases, which he summarized in 12 categories. No per-lawyer breakdown was provided by Mr. Van Buskirk. H. Tim Hoffman of Hoffman & Lazear, counsel for Landeros, used nine categories and specified the total time billed by each of the four firm lawyers who had worked on the matter (more than 66 hours for the firm). Elaine A. Ryan of Bonnett, Fairbourn, Friedman & Balint, counsel for Hernandez, reported a total of 206.6 hours in six categories. The total time billed by each of the four firm lawyers was provided. Ms. Ryan also explained her firm had associated with James B. Drimmer in San Diego, who spent a total of 58.5 hours in six general categories of work. Finally, James R. Patterson of the Patterson Law Group, counsel for Shughrou, used eight of the nine categories identified by Mr. Stonebarger and declared he had spent 53.8 hours and a second firm lawyer 66.7 hours prosecuting the case. Mr. Stonebarger and all but one of the other declarants offered to provide their firms' daily billing records for in camera review if the court requested them.

Party City agreed class counsel was entitled to fair compensation but opposed the motion on the ground the fees and costs claimed were excessive, the time charges

---

[4] Mr. Stonebarger's declaration provided the following summary of his firm's time: research on defendants and draft complaint (4.8 hours); draft and review defendants' demurrer; legal research regarding issues in demurrer; review and revise opposition (14.2 hours); review petition for coordination; review and revise response to petition for coordination; attend hearing on petition for coordination (15.3 hours); draft mediation brief; legal research regarding issues in mediation brief; travel and attend mediation (33.9 hours); settlement discussions; drafting of settlement agreement, notices, claim form, etc. (19.9 hours); draft preliminary approval papers and supporting declarations; legal research regarding preliminary approval; attend preliminary approval hearing (37.1 hours); draft motion for attorneys' fees, costs, and incentive awards; legal research regarding attorneys' fees issues (22.7 hours); review miscellaneous briefs, pleadings, stipulations (4.3 hours); and miscellaneous correspondence (6.9 hours).

The descriptions of services in the other declarations from class counsel contained substantially the same level of detail.

6

duplicative and the declarations inadequate and subject to proper evidentiary objections. Party City, noting the amount sought in fees was more than the face value of the settlement itself, suggested the award be no more than $137,062.80, the value billed by Party City's counsel (and approximately 40 percent of the award to the settlement class, giving the merchandise certificates full value).[5] Objections were filed to each of the declarations submitted by class counsel, primarily on grounds of lack of personal knowledge, hearsay and lack of foundation. Class counsel filed a reply memorandum, arguing they had adequately supported their fee application and repeating the offer to submit detailed billing records for in camera review. No additional evidence was submitted with the reply memorandum.

   3. *The Tentative Ruling*

   The January 22, 2013 hearing was continued to January 29, 2013. The January 29, 2013 proceedings were not reported. The court provided the parties with a tentative ruling that indicated the court was inclined, in part, (1) to defer ruling on the motion for attorney fees, finding that an award of fees was not justified under Code of Civil Procedure section 1021.5 and explaining, "In order to determine that lodestar amount is reasonable, plaintiff[s'] counsel to provide (in camera) the detail of hours expended in the litigation to assess whether the hours claimed were necessary and nonduplicative"; and (2) to defer a final ruling on total costs but finding that $1,293.34 of the costs claimed were not recoverable, $4,129.65 could be recovered. Class counsel was to submit further documentation to demonstrate the remaining $15,313.67 sought "was reasonably necessary to the conduct of the litigation and reasonable in amount."

   With respect to the lodestar calculation the court's tentative ruling stated, "It is apparent that all five firms utilized skill in prosecuting the case. It is also apparent that counsel spent significant time on the case . . . . However, the 720 hours in prosecuting this case seems to be very high. . . . [¶] There is nothing currently before the Court to

---

[5]    In a supporting declaration Party City indicated its lawyers had billed a total of 294.08 hours to the litigation.

assess whether the time expended by the five firms involved in this case was necessary and non-duplicative. The 'block entries' provided by five class counsel declarations above do nothing to remedy this issue. This is especially important here, given the fact that the five cases contained essentially the same allegations with regard to Party City's alleged former 'zip code' policy. . . . Under these circumstances, counsel should be prepared to submit time records for *in camera* review, and to justify why the time requested by class counsel is not duplicative."

A minute order entered January 29, 2013 reflects that the court issued its tentative ruling and called the matter for hearing. The minute order then states, "Parties are to file declarations on or before February 15, 2013." The matter was continued to February 22, 2013.

4. *The Supplemental Declarations*

On February 15, 2013 additional declarations were filed by Messrs. Van Buskirk, Hoffman, Stonebarger, Patterson and Ms. Ryan. Mr. Drimmer also filed a declaration. Mr. Stonebarger declared that his firm had assumed the role of lead counsel in prosecuting the action since its beginning and had "taken the lead role in drafting and filing pleadings and briefs, including the Petition for Coordination, Mediation Brief, Motion for Preliminary Approval of Class Action Settlement, Motion for Attorneys' Fees, Costs and Incentive Awards and Reply to Defendants' Opposition thereof, and Motion for Final Approval of Class Action Settlement." He also stated he had spent an additional 17.8 hours and his associate an additional 5.2 hours since the prior submission, bringing his firm's total to 208.7 hours. He included as an exhibit detailed time records for in camera review. The declaration itself contained an unredacted and detailed description of expenses incurred in connection with the case.

Ms. Ryan declared, from its inception, her firm had "assumed a primary role in the litigation and settlement of this case including, *inter alia*, the formulation of Plaintiffs' litigation strategy, conducting legal and factual research, drafting and editing of pleadings and submissions to the Court, and preparing discovery requests. My firm also took a

8

primary role in all settlement negotiations and the mediation before Judge Infante and in preparing the settlement documents." Although her original declaration had reported a total of 206.6 hours in six categories, the amended declaration stated 194.4 hours had been billed. Detailed time and cost records were provided to the court for in camera review.

Mr. Drimmer, whose fee claim had originally been included in Ms. Ryan's declaration, provided a six category summary of his 58.5 hours and explained he was primarily responsible for all client communications with plaintiff Lesley J. Hernandez. It does not appear that Mr. Drimmer provided any billing records for in camera review.

Mr. Patterson's declaration explained he and his firm had "worked closely with other plaintiffs' counsel to avoid duplication of efforts. Even though there are several counsel involved, my firm has a professional responsibility to our client to monitor all proceedings in the case independently of the work of other counsel. . . . We appeared by telephone at most hearings in order to minimize attorney time and travel costs. We did not duplicate research and drafting efforts." Mr. Patterson stated he had spent an additional 9.3 hours and his colleague at the firm an additional 2.6 hours participating in the January 29, 2013 hearing, reviewing the ruling and preparing this declaration. Detailed time and cost records were provided for in camera review. In his supplemental declaration Mr. Van Buskirk also provided detailed time and cost records.

Finally, Mr. Hoffman, counsel for plaintiff in the federal action, declared the time expended by his firm was neither duplicative nor cumulative of work done by other class counsel "because my client, Lourdes Landeros, has a separate action pending from this action in United States District Court . . . . The primary work in Ms. Landeros' case involved briefing an opposition to a motion to dismiss the case, which my firm was able to defeat. However, once the parties here agreed to the terms of a settlement on behalf of the Class, and in the interests of judicial economy, Ms. Landeros agreed to stay her

9

Federal action while this Court decided whether to approve the settlement in this action." Mr. Hoffman provided detailed time records for in camera review.[6]

5. *The Final Order for Fees and Costs*

At the continued hearing on February 22, 2013 Mr. Van Buskirk appeared in person and Mr. Stonebarger, Patricia Syverson of Bonnett, Fairbourn, Friedman & Balint (Ms. Ryan's law firm) and counsel for Party City appeared by telephone. After calling the case, the court stated, "This is actually a continuation of the fairness hearing. Since then counsel has submitted supplemental information including time sheets and time records that have been submitted in camera to the court. Everything is in order. The Court approves the settlement. It is signing an order granting final approval of the class action settlement; is signing an order granting the motion for attorneys' fees, costs, and incentive awards as requested. So that comes to attorneys' fees in the amount of $350,000; incentive awards in the amount of $3,500 to each named plaintiff; and costs of $20,735.66 which is what the court believes you have requested. So you're getting everything you've requested."

The court then discussed with class counsel appearing at the hearing a procedure for dividing the total fees awarded among the firms representing the class since the amounts identified totaled more than $350,000. At the conclusion of that discussion the court asked, "Anything else we need to discuss?" Mr. Van Buskirk responded, "Nothing further Your Honor." No other counsel spoke at that point. After thanking counsel, the court recessed the hearing.

The minute order for February 22, 2013 directed the parties to submit a revised order granting the attorney fee and costs motion. The final order granting the motion for

---

[6] During briefing in this court, Party City moved to augment the record on appeal to include the "complete, unredacted copies of the supplemental declarations (and exhibits attached thereto) which Plaintiffs lodged with the Trial Court on or about February 15, 2013 for the Trial Court's in camera review." Respondents did not file any opposition. However, the superior court file, which was forwarded to us at our request, does not contain any of the materials provided solely for the court's in camera review. Accordingly, we must deny Party City's motion.

attorney fees, costs and incentive awards was signed by the court and filed February 26, 2013. It provided a total of $350,000 in fees and costs and set forth an allocation of fees and costs to each of the six law firms (including Mr. Drimmer's) that had represented the class.

## DISCUSSION

### 1. *Standard of Review*

An order granting an award of attorney fees is generally reviewed for abuse of discretion. (*Powerhouse Motorsport Group, Inc. v. Yamaha Motor Corp.*, *U.S.A.* (2013) 221 Cal.App.4th 867, 887; *MHC Financing Ltd. Partnership Two v. City of Santee* (2005) 125 Cal.App.4th 1372, 1397.) In particular, "[w]ith respect to the *amount* of fees awarded, there is no question our review must be highly deferential to the views of the trial court." (*Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 777; see *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [recognizing trial court's broad discretion in determining amount of reasonable attorney fees because experienced trial judge is in the best position to decide value of professional services rendered in court]; *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 [same].) "An appellate court will interfere with the trial court's determination of the amount of reasonable attorney fees only where there has been a manifest abuse of discretion." (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1004; accord, *PLCM Group, Inc.,* at p. 1095.)

### 2. *The Lodestar Method for Assessing Reasonable Attorney Fees*

Class counsel and Party City agree the attorney fee award in this case must be grounded in the first instance on the number of hours reasonably worked multiplied by the reasonable hourly rate for each lawyer involved—the lodestar figure: "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. 'California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee

11

award.'"  (*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at p. 1095; accord, *Serrano v. Priest* (1977) 20 Cal.3d 25, 48 & fn. 23 ["'[t]he starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorney, must be a calculation of the attorney's services in terms of the time he has expended on the case'"].)

Of particular significance here, this initial calculation requires the court to determine the reasonable, not actual, number of hours expended by counsel entitled to an award of fees.  (See *EnPalm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 774 & fn. 4.) Thus, class counsel "are not automatically entitled to all hours they claim in their request for fees.  They must prove the hours they sought were reasonable and necessary."  (*El Escorial Owners' Assn. v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337, 1366.) "The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended."  (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1320.)  Indeed, "[a] fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 635; accord, *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 990; see also *Ketchum v. Moses, supra*, 24 Cal.4th at p. 1132 ["[i]n referring to '*reasonable*' compensation, we indicated that trial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation"].)

After making the lodestar calculation, the court may augment or diminish that amount based on a number of factors specific to the case before it, including the novelty and difficulty of the case, the attorneys' skill in presenting the issues, the amount involved and degree of success achieved, the extent to which the case precluded the attorneys from accepting other work and the contingent nature of the work.  (See *PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th 1084, 1096; *Serrano v. Priest, supra*, 20 Cal.3d at p. 49.)  There is "no hard-and-fast rule limiting the factors that may justify an exercise

12

of judicial discretion to increase or decrease a lodestar calculation." (*Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 834.) "The purpose of such adjustment is to fix a fee at the fair market value for the particular action." (*Ketchum v. Moses, supra*, 24 Cal.4th at p. 1132; see *Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 616.)

Although the court may consider the amount at issue in the litigation, as well as counsel's relative success in achieving the client's litigation objectives in adjusting the lodestar figure, the attorney fee award need not bear any specific relationship to the dollar amount of the recovery. (See *Taylor v. Nabors Drilling USA, LP* (Jan. 13, 2014, B241914) 222 Cal.App.4th 1228, 1251 [affirming $680,000 attorney fee award based on lodestar figure and multiplier in action under California Fair Employment and Housing Act with jury verdict for $160,000; "[a]ppellant has not cited any authority requiring that fee awards be proportional to the amount of damages recovered"]; cf. *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 420-421 [rejecting in awarding fees in civil rights action any requirement of proportionality of fees sought to verdict although recognizing the court may consider plaintiff's success in determining the reasonableness of fees].)

As discussed, class counsel did not seek to enhance or even to recover the full amount of the lodestar figure as they had calculated it: Their request for an aggregate award of fees and costs totaling $350,000 was approximately 10 percent below their lodestar figure of $366,990.50 plus costs claimed of $20,735.66.

3. *Party City Did Not Waive the Right To Appeal the Award of Attorney Fees or Forfeit Their Objection to the In Camera Procedure Used by the Trial Court*

Paragraph 2.5 of the settlement agreement recited the parties' agreement that class counsel was entitled to an award of attorney fees and provided a motion for fees would be filed by class counsel with the trial court (referred to as the "JCCP Court") and Party City would have the opportunity to oppose the motion as to the amount of fees requested. That paragraph also stated, "Defendant agrees to pay the attorneys' fees and costs approved by the JCCP Court to Plaintiffs' counsel within seven (7) days after the Final

13

Settlement Date." Paragraph 1.13 defines "Final Settlement Date," in part, to be either 31 days after notice has been served of entry of the court's final approval order and judgment "if no appeal or request for review is filed or made in the JCCP Action," or, "[i]f any appeal or request for review is filed or made in the JCCP action as a result of a timely objection," 14 days after notice has been served that the final approval order and judgment has been affirmed.

Class counsel on behalf of respondents argue, because the "Final Settlement Date" is extended only if an appeal is filed "as a result of a timely objection," the right to appeal any aspect of the settlement agreement was granted only to class members who had submitted a timely objection. Accordingly, they assert, Party City did not reserve its right to appeal from the trial court's order approving the amount of attorney fees and costs awarded to class counsel.

It is fundamental that "any waiver of the right to appeal must be clear and express." (*Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 952; accord, *Ruiz v. California State Auto. Assn. Inter-Ins. Bureau* (2013) 222 Cal.App.4th 596, 604 [waivers of right to appeal must be "clear and explicit"].) Any doubt will be resolved against a waiver of the right to appeal. (*Guseinov*, at p. 952; *Bischel v. Fire Ins. Exchange* (1991) 1 Cal.App.4th 1168, 1172.) "[I]f the parties to a contract want their agreement to encompass a waiver of the right to appeal from an anticipated judicial ruling, they must say so explicitly and unambiguously; they cannot leave their intent to be inferred from the language of the agreement." (*Ruiz*, at p. 605.)

The language relied upon by respondents fails to satisfy these demanding criteria. Nothing in the settlement agreement bound Party City to accept the amount of fees and costs awarded by the trial court or clearly and expressly prohibited Party City from challenging the fee order by an appeal to this court.

Our conclusion there has been no waiver of Party City's right to appeal the trial court's ruling on the amount of attorney fees and costs finds strong support in both *Lovett v. Carrasco* (1998) 63 Cal.App.4th 48—a personal injury case—and *Ruiz v. California*

14

*State Auto. Assn. Inter-Ins. Bureau, supra,* 222 Cal.App.4th 596—a recent decision involving class counsel's appeal of the trial court's award of attorney fees following a class-wide settlement. In *Lovett* the Court of Appeal held the agreement of medical care provider/lienholders "to be bound by the decision" of the trial court determining what each lienholder would receive "'without need of further litigation bringing closure to the entire matter'" was insufficient to constitute an express waiver of the right to appeal. (*Lovett,* at p. 53.)

Similarly, the appellate court in *Ruiz* held class counsel's agreement to accept in full satisfaction of their right to attorney fees either the maximum specified in the settlement agreement or the amount awarded by the trial court, whichever was less,[7] did not preclude an appeal from an award of fees class counsel considered to be too low ($350,000 rather than the $2.32 million requested). Relying on the analysis in *Lovett,* the *Ruiz* court held, "[T]he language in the Agreement in the present case is equivalent to that used in *Lovett, supra*, 63 Cal.App.4th 48, in that it sets forth the parties' agreement to accept a ruling to be made by the trial court, but does not expressly state that the parties are waiving their right to appeal that ruling." (*Ruiz v. California State Auto. Assn. Inter-Ins. Bureau, supra,* 222 Cal.App.4th at p. 605.)

The language from which respondents here attempt to infer a waiver of the right to appeal is even less clear than that in *Lovett* and *Ruiz.* The cited provisions concern the timing of Party City's obligation to pay the award of fees and costs. There is simply no reference to, let alone waiver of, Party City's right to appeal.

---

[7]     The *Ruiz* court explained the parties' settlement agreement contained an attorney fee provision known as a "clear sailing" provision. (*Ruiz v. California State Auto. Assn. Inter-Ins. Bureau, supra,* 222 Cal.App.4th at p. 598.) "Such provisions allow counsel for the plaintiff class (class counsel) to seek an award of attorney fees from the trial court, with the assurance that defendant will not oppose the fee application if the amount sought is less than or equal to a specified dollar amount." (*Ibid.*) The agreement in *Ruiz* contained an additional clause, giving rise to the waiver issue, that required class counsel to accept, in full satisfaction of their right to attorney fees, the lesser of the maximum specified in the clear sailing provision and the amount awarded by the trial court. (*Ibid.*)

15

Equally unpersuasive is respondents' argument that Party City waived (forfeited) any objection to the trial court's in camera review of billing records because its counsel remained silent at the February 22, 2013 hearing when the court issued its final ruling.[8] As discussed, at the outset of the hearing the court stated, "Everything is in order. The Court approves the settlement. It is signing an order granting final approval of the class action settlement; is signing an order granting the motion for attorneys' fees, costs, and incentive awards as requested." These announcements were immediately followed by a court-initiated discussion of the need for a revised form of order that properly divided the $350,000 awarded among the six law firms representing the named plaintiffs. The court invited no argument or discussion regarding its rulings. Read in context, the court's final inquiry before concluding the hearing, "Anything else we need to discuss," was directed to the logistics of final documentation, not the substance of its orders. Under these circumstances silence by Party City's counsel did not forfeit its right to challenge the trial court's use of undisclosed billing records as a basis for its fee award.

In any event, an appellate court has discretion to consider for the first time on appeal an issue of law, particularly if it is not dependent on the production of additional evidence and, as here, the parties have been afforded a reasonable opportunity to address the question. (See *Waller v. Truck Ins. Exchange, Inc*. (1995) 11 Cal.4th 1, 24; *Matera v. McLeod* (2006) 145 Cal.App.4th 44, 59; see also *City of Maywood v. Los Angeles Unified School Dist.* (2012) 208 Cal.App.4th 362, 416, fn. 24.) Although Party City did not formally object to the trial court's in camera review of class counsel's billing records, we choose to exercise that discretion and to decide the propriety of the procedure utilized by the trial court to rule on the request for an award of attorney fees.

---

[8] Respondents do not contend Party City forfeited its objection at the unreported January 29, 2013 hearing when the trial court issued its tentative ruling and first invited the in camera submission of class counsel's billing records.

4. *The Trial Court Improperly Relied upon Evidence Not Provided to Party City To Award Class Counsel the Full Amount of Fees and Costs Requested*

It is not necessary to provide detailed billing timesheets to support an award of attorney fees under the lodestar method. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 254 [affirming lodestar fee award based on "declarations evidencing the reasonable hourly rate for [the attorneys'] services and establishing the number of hours spent working on the case"; "California case law permits fee awards in the absence of detailed time sheets"]; see *Mardirossian & Associates v. Ersoff* (2007) 153 Cal.App.4th 257, 269 ["there is no legal requirement that an attorney supply billing statements to support a claim for attorney fees"].) Declarations of counsel setting forth the reasonable hourly rate, the number of hours worked and the tasks performed are sufficient. (*Steiny & Co. v. California Electric Supply Co.* (2000) 79 Cal.App.4th 285, 293 ["[a]n attorney's testimony as to the number of hours worked is sufficient to support an award of attorney fees, even in the absence of detailed time records"].) "'Although a fee request ordinarily should be documented in great detail, it cannot be said . . . that the absence of time records and billing statements deprive[s] [a] trial court of substantial evidence to support an award . . . .'" (*City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 784-785.)

Each of the initial declarations submitted in support of class counsel's request for attorney fees reported the total number of hours spent in various generalized categories of services (ranging from six to 12) by all firm lawyers working on the Party City matter.[9] Although most of the declarations also included the total number of hours spent by each lawyer on the case, none indicated how much time a specific lawyer spent on the tasks in a category, let alone on discrete projects. No time records were attached.

---

[9] The declarations also stated the hourly rate charged by each of the lawyers involved and provided information about the lawyers' and the law firms' experience in similar matters. Party City has not challenged the reasonableness of the hourly fees used in the trial court's lodestar calculation.

Party City opposed the fee request, arguing it included unnecessary and duplicative activity that should be excluded from the lodestar calculation. The trial court appeared inclined to agree with Party City, indicating in its tentative ruling both that 720 hours seemed high and that it was unable to assess from the information provided in the declarations whether the time expended by the firms was necessary and nonduplicative. (See generally *In re Vitamin Cases* (2003) 110 Cal.App.4th 1041, 1054-1055 [expressing concern with "specter of duplicative and superfluous litigation and hence unnecessary fees and costs" in fee request following settlement of multiple, overlapping private putative class actions].) At that point it was certainly within the trial court's discretion to request additional information to allow it to determine the number of hours reasonably worked for inclusion in the lodestar calculation. What was not permissible, however, was for the court to invite an in camera review of time sheets and billing records not also made available to Party City and then to award fees without providing an opportunity for further argument based on the supplemental evidence presented.

As discussed, class counsel had the burden of proving the reasonable number of hours they devoted to the litigation, whether through declarations or redacted or unredacted time sheets or billing records. (See, e.g., *Ellis v. Toshiba America Information Systems, Inc*. (2013) 218 Cal.App.4th 853, 883; *El Escorial Owners' Assn. v. DLC Plastering, Inc., supra,* 154 Cal.App.4th at p. 1366.) "A trial court may not rubberstamp a request for attorney fees, but must determine the number of hours *reasonably* expended." (*Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 271.)

Under our adversarial system of justice, once class counsel presented evidence to support their fee request, Party City was entitled to see and respond to it and to present its own arguments as to why it failed to justify the fees requested. "This system is premised on the well-tested principle that truth—as well as fairness—is '"best discovered by powerful statements on both sides of the question."'" (*Penson v. Ohio* (1988) 488 U.S. 75, 84 [109 S.Ct. 346, 102 L.Ed.2d 300]; see generally *Abourezk v. Reagan* (D.C.Cir. 1986) 785 F.2d 1043, 1060 ["It is a hallmark of our adversary system that we safeguard

18

party access to evidence tendered in support of a requested court judgment. The openness of judicial proceedings serves to preserve both the appearance and reality of fairness in the adjudications of United States courts. It is therefore the firmly held main rule that a court may not dispose of the merits of a case on the basis of ex parte, in camera submissions."].)

Respondents defend the trial court's action, asserting "courts routinely review detailed time records for *in camera* review, without providing access to opposing counsel." The sole California authority cited to support that sweeping generalization is *In re Vitamin Cases, supra,* 110 Cal.App.4th 1041 in which the Court of Appeal described the trial court's in camera review of billing records in its recitation of the factual and procedural background of the case (see *id*. at p. 1049), but did not consider the propriety of that procedure in its discussion reversing the fee award. That decision, which clearly expressed the court's concern that multiple sets of class counsel were being compensated for duplicative and unproductive services, does not support the trial court's in camera receipt and review of billing records to support its fee award here. (See *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1160.)

Relying on an unpublished Ninth Circuit decision, *Marshall v. Kelly Services, Inc*. (9th Cir. 1999) 1999 U.S.App.Lexis 8754,[10] respondents also suggest class counsel's

---

[10] Respondents quote the court's statement, "submission of attorney billing records *in camera* is permissible to preserve attorney client privilege." (*Marshall v. Kelly Services, Inc., supra*, 1999 U.S.App.Lexis at *5.) That language is immediately followed by the court's explanation that the purpose of the submission was to "determine whether the information is privileged or should be disclosed" and its observation that the party submitting the material eventually disclosed its unredacted billing records after which the district court explicitly offered the opposing party the opportunity to respond. Accordingly, the court found any challenge to this procedure was moot. (*Ibid*.)

There is no suggestion in *Kelly* that evidence submitted in camera could properly be used to decide the merits of the controversy before the court.

19

billing records contain privileged information, thus justifying in camera review.[11] We reject that rationale for several reasons. First, we seriously doubt that all—or even most—of the information on each of the billing records proffered to the court was privileged. Certainly the trial court made no such finding. Nor is there any explanation why the supplemental information requested by the court could not have been provided by filing—and serving on Party City—redacted copies of the bills deleting any privileged information. (See *Lafayette Morehouse, Inc. v. Chronicle Publishing Co*. (1995) 39 Cal.App.4th 1379, 1382 [prevailing defendant on special motion to strike under Code Civ. Proc., § 425.16 may support request for attorney fees with billing records redacted to conceal information protected by the attorney-client privilege; defendant was not required to waive the privilege to obtain fees]; *Banning v. Newdow* (2004) 119 Cal.App.4th 438, 454 [redacted bills adequate to allow challenge to reasonableness of fees requested].) Finally, to the extent class counsel made the judgment they needed to offer their full, unredacted billing records to support their request for fees, they may well have impliedly waived any privilege that otherwise protected them. (See *Chicago Title Ins. Co. v. Superior Court* (1985) 174 Cal.App.3d 1142, 1149 [implied waiver of lawyer-client privilege occurs when plaintiff has placed in issue a communication that goes to the heart of the claim in controversy]; cf. *Titmas v. Superior Court* (2001) 87 Cal.App.4th 738, 744 ["the privilege applies even to disclosures to the court"].) If so—an issue we need not

---

[11]     Under appropriate circumstances Evidence Code section 915, subdivision (b), authorizes the trial court to receive in camera disclosure of information to assist in deciding whether it is privileged and thus protected from disclosure. (See *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 736 [information claimed to be privileged work product]; *Applera Corp. v. MP Biomedicals, LLC* (2009) 173 Cal.App.4th 769, 788 [information claimed to constitute trade secrets]; but see *Costco*, at p. 736 ["[n]o comparable provision permits in camera disclosure of information alleged to be protected by the attorney-client privilege"].) Neither Evidence Code section 915 nor any other statutory provision authorizes the court to use that information to decide the merits of a case if the other side has not had an opportunity to review the material and be heard.

decide at this point—there was, as a consequence, no basis to bar Party City from full access to the evidence presented to the court.

     5.  *Reconsideration of the Cost Award Is Necessary*

In their original moving papers class counsel requested an award of $20,735.66 in costs. In its tentative ruling, based on Party City's objections, the court indicated $1,293.34 in costs were not recoverable and questioned whether an additional $15,313.67 of costs were reasonably necessary to the conduct of the litigation and reasonable in amount. The court's final order awarded the full $20,735.66 originally requested although respondents contend they had withdrawn specific cost items disallowed in the tentative ruling (postage, telephone and photocopying costs).

We recognize class counsel's $350,000 lid on the aggregate amount of fees and costs to be awarded might well make academic determination of the precise amount of recoverable costs. Nonetheless, because the cost portion of the final order, like the fee portion, was based at least in part on the court's improper in camera review of class counsel's billing records, we remand for reconsideration of the cost order as well.

### DISPOSITION

The order awarding attorney fees and costs is reversed, and the matter remanded for further proceedings not inconsistent with this opinion. The parties are to bear their own costs on appeal.


                    PERLUSS, P. J.

We concur:


     ZELON, J.                SEGAL, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.