Filed 11/12/15  Squatrito v. Creditors Specialty Service CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ANGEL SQUATRITO,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CREDITORS SPECIALTY SERVICE, INC., et al.,<br><br>    Defendants and Appellants. | B256571<br><br>(Los Angeles County<br>Super. Ct. No. PC053171) |

APPEAL from orders of the Superior Court of Los Angeles County, Melvin D. Sandvig and John J. Kralik, Judges.  Affirmed in part and dismissed in part.

Neil C. Evans for Defendants and Appellants.

Law Office of Steven A. Simons and Steven A. Simons for Plaintiff and Respondent.

_____

**INTRODUCTION**

Angel Squatrito filed this action for violation of the federal Fair Debt Collection Practices Act, 15 United States Code section 1692 et seq., and the California Rosenthal Fair Debt Collection Practices Act, Civil Code section 1788 et seq., against Creditors Specialty Service, Inc. and Charles Stanley. After giving the parties the opportunity to file supplemental briefs on several jurisdictional issues, and after having considered the parties' supplemental briefs, we affirm an order awarding Squatrito her attorneys' fees and dismiss the appeal from the other orders.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.      *The Allegations in the Complaint*

This action arises from efforts to collect payment on a $125.75 bill from Cal Pet Crematory, Inc. for the cremation of a Pomeranian named Tapioca.[1] Apparently, however, Tapioca was not Squatrito's dog. The signature on the Cal Pet Crematory registration card was not hers. Cal Pet Crematory apparently sent Squatrito a bill for the cremation of Tapioca, but she did not receive it.

Several months later, Creditors Specialty Service began efforts to collect this debt, threatening legal action if Squatrito did not pay it. After receiving several letters and "an unfiled copy of a small claims action" claiming that the amount due was then $161.94, Squatrito wrote to a credit reporting agency to dispute the debt. Squatrito alleges in her complaint that a few days later Stanley, the president of Creditors Specialty Service, "falsely and improperly verified the debt by 1) reporting the original debt as being

---

[1]      The Pomeranian is a "compact, short-backed, active toy dog. He has a soft, dense undercoat with a profuse harsh-textured outer coat. His heavily plumed tail is set high and lies flat on his back. He is alert in character, exhibits intelligence in expression, buoyant in deportment, and is inquisitive by nature." (Karyn Grey, *Breed-Specific Legislation Revisited: Canine Racism or the Answer to Florida's Dog Control Problems?* (2003) 27 Nova L. Rev. 415, 448, fn. 191.) The average Pomeranian weighs between "three to seven pounds." (*Ibid.*)

$200.00; 2) falsely reporting that [Squatrito] could not be located; and 3) posting the original date of the alleged debt" incorrectly.  Creditors Specialty Service and Stanley sent Squatrito more letters and made "multiple telephone calls" demanding payment of the debt, which they claimed had increased to $162.38.  After Squatrito wrote to Creditors Specialty Service to dispute the debt, Creditors Specialty Service and Stanley sent her "yet additional correspondence purporting to attempt to collect this debt purportedly owed to 'Cal Pet Crematory,'" which they claimed by then had increased to $259.82.

Creditors Specialty Service filed a small claims action against Squatrito claiming the amount due on the Cal Pet Crematory debt was $279.79.  Creditors Specialty Service obtained a judgment against Squatrito, which she moved to set aside.  The small claims court granted her motion to set aside the judgment and transferred the case to a different courthouse because Creditors Specialty Service had filed the case in the wrong judicial district.  On the date set for trial, Creditors Specialty Service did not appear and the small claims court dismissed the case.  Even after the dismissal of the small claims action, Creditors Specialty Service and Stanley continued to demand payment of the Cal Pet Crematory debt.

Squatrito filed this action on June 12, 2012.  She alleged that Creditors Specialty Service and Stanley sent "multiple correspondence with incorrect amounts purportedly due," made "[m]ultiple threats to file litigation, with no real intention to proceed," filed false reports with credit bureaus, harassed Squatrito "with invalid collection notices [that] were intended to and did in fact cause" damage to her credit, loss of income, increased cost of credit, and emotional distress.  Squatrito asserted causes of action for negligent compliance with, willful noncompliance with, and violation of the federal Fair Debt Collection Practices Act, and willful violations of the California Rosenthal Fair Debt Collection Practices Act.

3

B.    *The Trial*

The case proceeded to a four-day jury trial in January 2014 before Judge Melvin D. Sandvig.  Squatrito, Stanley, and several other witnesses testified, although the record on appeal does not include the transcript of the trial testimony.  During the morning session of the second day of jury deliberations, Judge Sandvig and counsel for the parties discussed the verdict form and revised it to correct a mistake in the directions to the jurors regarding the order in which to answer the questions on the form.  The court made the revisions, and then stated, "Okay? We're good?" Counsel for Creditors Specialty Service and Stanley made "no audible response" to the court's question.

The verdict form asked the jury to answer 18 questions.  Question No. 1 asked whether Squatrito had proven by a preponderance of the evidence that Stanley was a debt collector within the meaning of the Fair Debt Collection Practices Act.  Question No. 2 asked whether Squatrito had proven that Creditors Specialty Service "or any of its agents or debt collectors, or Charles Stanley used any false, deceptive, or misleading representation or means" to collect the debt.  Question No. 4 asked whether Squatrito had proven that Creditors Specialty Service "or any of its agents or debt collectors, or Charles Stanley, used any unfair or unconscionable means to collect or attempt to collect" the debt.  The verdict form included similar questions, Nos. 10 and 12, for the California Rosenthal Fair Debt Collection Practices Act.  The penultimate question, No. 17, asked whether Squatrito had proven that Creditors Specialty Service or Stanley "willfully and knowingly committed any of [the] violations."

No one apparently noticed the problem with the use of the disjunctive in the verdict form until after lunch on the second day of deliberations, when counsel for Creditors Specialty Service and Stanley raised the issue.  During the afternoon session, however, Judge Sandvig was not there.  Instead, the minute order reflects that Judge John J. Kralik "presid[ed] on behalf of" Judge Sandvig.  Judge Kralik stated that Judge Sandvig was "at a lunch hour appointment" and had asked him "to take the verdict." Counsel for Creditors Specialty Service and Stanley stated, "Unfortunately, Judge Sandvig is not here, but I wanted to put a matter on the record that came to my attention,"

4

and he proceeded to object to the verdict form. The transcript indicates that both sides stipulated that Judge Kralik could take the verdict, but not that he could hear or rule on objections.

Counsel for Creditors Specialty Service and Stanley stated, "In reviewing the verdict form, I believe that there's a defect. I don't know that anything can be done, but it is something that came to my attention." The court stated, "Go ahead and put it on the record. I don't know what [you] would do at this point because the verdict has been submitted . . . [a]nd apparently they have reached a verdict."

Counsel for Creditors Specialty Service and Stanley argued, "The verdict form does not distinguish between acts of each defendant. It lumps both defendants together and under . . . both Acts . . . in order for an individual to be personally liable, I believe they have to have had personally committed these acts that are in violation of the law. And unfortunately, now that I've looked at the verdict -- in a little bit different light -- . . . it doesn't distinguish between Charles Stanley individually, and each of the questions say[s] Creditors Specialty, a California Corporation or Charles Stanley." Judge Kralik, who had not presided over the trial, stated that he had assumed the verdict form was written in this way because the parties were not litigating whether Stanley was acting in the course and scope of his employment. Counsel for Creditors Specialty Service and Stanley explained that he was not arguing that Creditors Specialty Service was not responsible for the acts of Stanley, but that Stanley was not responsible for the acts of Creditors Specialty Service, at least not without a separate finding of liability as to Stanley.

Counsel for Squatrito responded that counsel for the defendants had the verdict form for several months, that "[t]o now raise it, after saying to the judge [Judge Sandvig] yesterday that he approved the form and [it] was acceptable, is inviting error and trying . . . to make the issue out of something that was a nonissue all the way through." Counsel for Squatrito also stated, "Charles Stanley testified that he was the president of the company, and he was responsible for overseeing the files and the individuals working under him."

5

Judge Kralik overruled the objection. He stated that "the most likely outcome is that you will waive that defect, and so for that reason I'm going to proceed with the verdict."

The jury returned yes answers to most of the questions, including question Nos. 1, 2, 4, 10, 12, and 17. The jury awarded Squatrito $500 in noneconomic damages for violations of the federal Fair Debt Collection Practices Act, $500 in noneconomic damages for violations of the California Rosenthal Fair Debt Collection Practices Act, and $7,500 in statutory penalties. The court entered judgment against Creditors Specialty Service and Stanley on January 24, 2014, and mailed notice of entry of judgment on January 27, 2014.

C.    *The Posttrial Motions*

On February 13, 2014 Creditors Specialty Service and Stanley filed a notice of intention to move for a new trial pursuant to Code of Civil Procedure section 657. That same day they also filed a document entitled, "Notice of Intention to Move for an Order Correcting, Vacating, or Modifying the Judgment; Motion to Correct, Vacate or Modify Judgment" pursuant to Code of Civil Procedure section 663. The notice of the latter motion stated that Stanley was moving "to modify, correct, or vacate" the judgment against him because the verdict form did not state that he, as opposed to Creditors Specialty Service, "committed any wrongful act under either the Fair Debt Collection Practices Act or the Rosenthal Fair Debt Collection [P]ractices [A]ct, since all of the questions directed to the Jury used the word 'or' as to any violation by Creditors Specialty [Service] or Stanley." Therefore, Stanley argued, "there was a fatal flaw to the determination of whether [he] was personally responsible for any violation of the Act."

On March 7, 2014 Squatrito filed an opposition to Stanley's motion for a new trial. Squatrito argued that the court did not have jurisdiction to hear the motion because Stanley had filed the notice of intention to move for a new trial late, and that Stanley had abandoned the motion by not filing a supporting memorandum of points and authorities. On the merits, Squatrito argued that Creditors Specialty Service and Stanley "had ample

6

time to review the Verdict Form in advance of its approval" and there was no ambiguity in the verdict. Squatrito also filed an opposition to the motion to correct, vacate or modify the judgment. She argued that because Creditors Specialty Service and Stanley "approved the Verdict Form which they now challenge," "relief under section 663 [was] unavailable."

Meanwhile, on February 10, 2014 Squatrito filed a motion for attorneys' fees seeking $101,875 in fees and $11,358.78 in costs. In support of the motion, counsel for Squatrito submitted a declaration and a detailed description of the tasks he performed and the time he spent on each task, as well as a declaration from Squatrito. Creditors Specialty Service and Stanley opposed the motion, arguing that Squatrito was not entitled to fees because her recovery at trial was so small, the fee request was "unsubstantiated," and the award should not be against Stanley because "[t]he Jury never found that Mr. Stanley had commit[t]ed any wrongful act."

Judge Sandvig heard all of the motions on March 25, 2014. The court denied the motion for a new trial and the motion for an order correcting, vacating, or modifying the judgment. The court granted Squatrito's motion for attorneys' fees, but awarded only $21,740 in fees. There is no indication in the record that the clerk or any party served a notice of entry of the order. The minute order states that the parties waived notice.

On May 27, 2014 Creditors Specialty Service and Stanley filed a notice of appeal. The notice states that they were appealing "the Granting of Plaintiff's Motion for Attorneys' Fees, the Denial of their Motion to Vacate Judgment, and all other rulings issued by the Trial Court at the hearing on March 25, 2014 before Honorable Melvin San[d]vig, Judge Presiding."

## DISCUSSION

The notice of appeal states that Creditors Specialty Service and Stanley are appealing from the trial court's March 25, 2014 order granting Squatrito's motion for attorneys' fees, denying the motion to vacate the judgment, "and all other rulings issued by" the court. Assuming we can liberally construe the last phrase to include the court's

7

denial of the motion for a new trial (see *Neumann v. Melgar* (2004) 121 Cal.App.4th 152, 161, fn. 5), we lack jurisdiction to review both the order denying the motion to vacate a judgment under Code of Civil Procedure 663 and the order denying the motion for a new trial under Code of Civil Procedure section 657 because they are not appealable orders. (*City of Los Angeles v. Glair* (2007) 153 Cal.App.4th 813; see *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696 ["[a] reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment"]; *Katzenstein v. Chabad of Poway* (2015) 237 Cal.App.4th 759, 765 ["[a]ppellate courts have jurisdiction over a direct appeal . . . only where there is an appealable order or judgment"].)

Of course, we might be able to liberally construe the notice of appeal to include an appeal from the January 24, 2014 judgment, even though the notice of appeal refers specifically and exclusively to the trial court's postjudgment orders on March 25, 2014. (See *International Assn. of Firefighters, Local 230 v. City of San Jose* (2011) 195 Cal.App.4th 1179, 1194, fn. 4 ["'"notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced"'"]; but see *Baker v. Castaldi* (2015) 235 Cal.App.4th 218, 225 ["'[d]espite the rule favoring liberal interpretation of notices of appeal, a notice of appeal will not be considered adequate if it completely omits any reference to the judgment being appealed'"]; *Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 173 ["[t]he policy of liberally construing a notice of appeal in favor of its sufficiency (Cal. Rules of Court, rule 8.100(a)(2)) does not apply if the notice is so specific it cannot be read as reaching a judgment or order not mentioned at all"].)

Even if we were to construe the notice liberally to include an appeal from the judgment, however, such an appeal would be untimely. The clerk mailed notice of entry of judgment on January 27, 2014. Pursuant to California Rules of Court, rule 8.104(a)(1)(A), Creditors Specialty Service and Stanley had 60 days, or until March 28, 2014, to file a notice of appeal from the judgment. They did not file a notice of appeal

8

until May 27, 2014, long after the 60-day period had expired.  Therefore, if we construe the notice of appeal to include an appeal from the judgment, it was untimely.  (See *Ellis v. Ellis* (2015) 235 Cal.App.4th 837, 842 ["[i]f a notice of appeal is not timely, the appellate court must dismiss the appeal"]; *Starpoint Properties, LLC v. Namvar* (2011) 201 Cal.App.4th 1101, 1107 ["'[c]ompliance with the requirements for filing a notice of appeal is mandatory and jurisdictional,' and an appellate court therefore must dismiss an appeal that is untimely"].)

As stated, Creditors Specialty Service and Stanley did file on February 13, 2014 a notice of intention to move for a new trial.  Under California Rules of Court, rule 8.108(b), filing and serving a valid notice of intention to move for a new trial can extend the time to file a notice of appeal up to 180 days after entry of judgment.[2]  In order for this extension to apply, however, the notice of intention to move for a new trial must be valid.  The notice of intention to move for a new trial filed by Creditors Specialty Service and Stanley was not valid because it was untimely.  A notice of intention to move for a new trial must be filed and served within 15 days of the date of mailing notice of entry of judgment by the clerk.  (Code Civ. Proc. § 659, subd. (a)(2); see *Palmer v. GTE California, Inc.* (2003) 30 Cal.4th 1265, 1271; *Collins v. Sutter Memorial Hospital* (2011) 196 Cal.App.4th 1, 12.)  As noted, the clerk mailed notice of entry of judgment on January 27, 2014, and Creditors Specialty Service and Stanley did not file their notice of intention to move for a new trial until February 13, 2014, 17 days later.[3]  Because the

---

[2]     California Rules of Court, rule 8.108(b)(1), provides:  "If any party serves and files a valid notice of intention to move for a new trial" and "the motion for a new trial is denied, the time to appeal from the judgment is extended for all parties until the earliest of:  (A) 30 days after the superior court clerk or a party serves an order denying the motion or a notice of entry of that order; (B) 30 days after denial of the motion by operation of law; or (C) 180 days after entry of judgment."  There is no evidence in the record that the superior court clerk or any party served a copy of the trial court's order denying the motion by Creditors Specialty Service and Stanley for a new trial.

[3]     Creditors Specialty Service and Stanley argue in their supplemental brief that their notice of intention for a new trial was not untimely because the clerk mailed notice of entry of judgment to the wrong address for their attorney.  The clerk, however, mailed

9

notice of intention to move for a new trial was invalid, California Rules of Court, rule 8.108(b)(1), did not extend the time for Creditors Specialty Service and Stanley to file (what we might construe as) a notice of appeal from the judgment, and the May 27, 2014 notice of appeal is still untimely. (See *In re Marriage of Patscheck* (1986) 180 Cal.App.3d 800, 802 ["[a] notice of intention filed after the allowed time is invalid and does not extend the time for filing a notice of appeal"].)[4] Therefore, even if we construed the notice of appeal to include an appeal from the judgment, we would not have jurisdiction to review the jury's verdict through the judgment.

We do have jurisdiction to review the trial court's March 25, 2014 order granting Squatrito's motion for attorneys' fees. A "'postjudgment order awarding or denying attorney's fees is separately appealable, as an order made after an appealable judgment.'" (*People ex rel. Dept. of Transportation v. Superior Court* (2012) 203 Cal.App.4th 1505, 1509.)

Creditors Specialty Service argues that Squatrito's motion for attorneys' fees "did not include 'admissible evidence' in the form of authenticated attorney fee bills, meeting

---

notice of entry of judgment to the address counsel for Creditors Specialty Service and Stanley listed on the answer, and there is no evidence in the record (for example, a declaration by counsel) that this was not a correct address. Nor is there any evidence that counsel for Creditors Specialty Service and Stanley ever gave notice of a change of address at any time after filing the answer on September 25, 2012. The case cited by Creditors Specialty Service and Stanley in their supplemental brief, *Hughey v. City of Hayward* (1994) 24 Cal.App.4th 206, does not hold that a defect in the service of a notice of entry of judgment "prevents the dismissal of an appeal for untimeliness," nor does it even involve an untimely notice of intention to move for a new trial.

[4] The same is true for the motion to vacate the judgment Creditors Specialty Service and Stanley also filed on February 13, 2014. Although under California Rules of Court, rule 28.108(c), a valid motion to vacate the judgment can extend the time to file a notice of appeal up to 180 days after entry of judgment, Code of Civil Procedure section 663a requires that the moving party file and serve such a motion within 15 days of the date of mailing notice of entry of judgment. The filing of the motion to vacate the judgment also did not extend the time for Creditors Specialty Service and Stanley to file a notice of appeal.

the business records exception to the hearsay rule of Evidence Code [s]ection 1271." Attorney fee bills, however, are not required. An attorney's declaration, like the one submitted by counsel for Squatrito, is sufficient. "'"[T]he absence of time records and billing statements"'" does not "'"deprive[] [a] trial court of substantial evidence to support an award . . . ."'" (*Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1324; see *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 698 ["[i]t is well established that 'California courts do not require detailed time records, and trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent'"]; *Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375 ["[t]he law is clear . . . that an award of attorney fees may be based on counsel's declarations, without production of detailed time records"].) Moreover, although not required, counsel for Squatrito did submit his time records, and authenticated them. The five pages of counsel's time records presented a breakdown of the tasks he performed by date, timekeeper, description, time, and amount. The trial court did not abuse its discretion in awarding Squatrito some but not all of the attorneys' fees she had requested.

The only other argument raised on appeal in connection with the attorneys' fees order is that Stanley should not be liable for attorneys' fees because of the ambiguity in the verdict. The judgment, however, which we have no jurisdiction to review, states that Squatrito "is entitled to judgment on the complaint against defendants, Creditors Specialty Service, Inc. and Charles Stanley," and orders Squatrito to recover $8,500 from both Creditors Specialty Service and Stanley. Therefore, because Squatrito recovered a judgment against Stanley, she prevailed against him and is entitled to recover attorneys' fees from him. (See 15 U.S.C. § 1692k, subd. (a)(3) [debt collector who fails to comply with the federal Fair Debt Collection Practices Act is liable for reasonable attorneys' fees]; *Evon v. Law Offices of Sidney Mickell* (9th Cir. 2012) 688 F.3d 1015, 1032 [the federal statute's "statutory language makes the award of fees mandatory"]; Civ. Code, § 1788.30, subd. (c) ["[r]easonable attorney's fees, which shall be based on time necessarily expended to enforce the liability, shall be awarded to a prevailing debtor"];

11

*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1132 ["[i]f a debtor is the prevailing party in litigation alleging a cause of action under the Act, he or she is entitled to an award of costs and reasonable attorney fees"], footnote omitted.) Creditors Specialty Service and Stanley have not cited to any authority that would allow us to review the merits of an unreviewable judgment through an appeal from a postjudgment order awarding attorneys' fees.

## DISPOSITION

The order awarding Squatrito her attorneys' fees is affirmed. The appeal from the orders denying the motions by Creditors Specialty Service and Stanley to vacate the judgment and for a new trial is dismissed. Squatrito is to recover her costs and attorneys' fees on appeal.


SEGAL, J.


We concur:


ZELON, Acting P. J.


BECKLOFF, J.[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.