Filed 1/6/15  Nguyen v. Wells Fargo CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JENNIE NGUYEN,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.,<br><br>Defendants and Respondents<br><br>SHENOI KOES,<br><br>Movant and Appellant. | B256375<br><br>(Los Angeles County<br>Super. Ct. No. BC462248) |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Mark V. Mooney, Judge.  Affirmed.

Shenoi Koes, Allan A. Shenoi, Daniel J. Koes, and Nneka Egbujiobi for Movant Appellant.

Kading Briggs, Glenn L. Briggs, Theresa A. Kading, and Lisa M. Fike for Defendants and Respondents.

Class counsel and appellant Shenoi Koes LLP ("Class Counsel") challenges the trial court's order awarding $297,700 in attorney fees following the settlement of class claims. Class Counsel contends that, by applying incorrect legal standards and relying on hours expended in an earlier class action settlement against Wells Fargo (*Madzounian v. Wells Fargo*), the court improperly reduced the award from the $584,055.46 Class Counsel requested. We disagree and conclude that the court did not abuse its discretion in awarding attorney fees of $297,700. We therefore affirm.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

**A.     Nguyen's Claims**

In May 2011, Plaintiff Jennie Nguyen ("Nguyen") filed a Complaint against Wells Fargo & Company and Wells Fargo Bank, N.A. (jointly, "Wells Fargo"). Nguyen, a former Wells Fargo employee, alleges that she was named as a defendant in a federal criminal complaint and subsequently arrested, but that she was never indicted or convicted of any wrongdoing, and that the complaint against her was dismissed two weeks after her arrest. Shortly thereafter, the Wells Fargo branch office where Nguyen worked was robbed at gunpoint while she was on duty. Later, two Wells Fargo investigators questioned Nguyen about the robbery as well as her prior arrest. Wells Fargo subsequently terminated her, based on alleged violations of Wells Fargo's Code of Ethics and Business Conduct Policies. Nguyen alleged that after her termination Wells Fargo refused to pay her for accrued vacation time.

On these allegations, Nguyen asserted class claims for violations of Labor Code[1] section 432.7, violations of Code of Civil Procedure section 1786.53, subdivision (b), unpaid wages, waiting time penalties, failure to furnish timely and accurate wage statements, violations of Business and Professions Code section 17200 *et seq.* ("UCL"), and violations of the Private Attorney General Act ("PAGA"). Nguyen also asserted

---

[1]     All future references are to the Labor Code unless otherwise stated.

2

individual claims for wrongful termination in violation of public policy, breach of the implied covenant of good faith and fair dealing, and defamation.

## B.     Cariaga's Claims

In October 2011, Nguyen filed a Second Amended Complaint adding plaintiff Merry Cariaga ("Cariaga"). Cariaga alleged she resigned from Wells Fargo on February 17, 2011, but that Wells Fargo did not pay her until March 4, 2011. The Second Amended Complaint includes Cariaga in the class claims for waiting time penalties and for failure to furnish timely and accurate wage statements, as well as the derivative UCL and PAGA claims.

Plaintiffs filed a Fourth Amended Complaint in September 2012. This amendment added a new subclass, Subclass VI, defined as "all Wells Fargo former California employees whose last date of employment was after January 18, 2011, and were [*sic*] not timely paid all final wages." Cariaga, on behalf of herself and Subclass VI (as later redefined in the settlement agreement), eventually settled the waiting time penalty claim and derivative UCL and PAGA claims. The remainder of Nguyen's and Cariaga's class and individual claims were dismissed.

## C.     *Madzounian v. Wells Fargo*

In March 2009, plaintiff Sossi Madzounian commenced a putative class action in Los Angeles Superior Court against Wells Fargo, captioned *Madzounian v. Wells Fargo Bank, National Association* ("*Madzounian*"). The *Madzounian* complaint alleged class action claims for unpaid overtime, failure to pay all wages owed upon termination, and failure to pay wages timely upon termination under section 203. Madzounian voluntarily dismissed her claims for unpaid overtime and failure to pay all wages owed upon termination. In November 2010, the parties reached a class-wide settlement of Madzounian's section 203 claim for failure to pay wages timely upon termination. The *Madzounian* court granted final approval of the settlement in August 2012.

The *Madzounian* settlement class consisted of approximately 15,000 members: "all former Wells Fargo employees employed in California with a 'termination date' from May 21, 2008 through January 18, 2011, who had at least a one-day gap between their

3

'termination date' and 'check-issuance date' according to Wells Fargo's records." Thus, the settled *Madzounian* waiting time penalties claim was premised on the fact that Wells Fargo delayed its payment of wages owed to terminated employees beyond the time permitted by Labor Code sections 201 through 203.

The *Madzounian* settlement was structured as a common fund settlement and resulted in a total settlement fund of $3,558,455. Counsel for Madzounian was awarded $1,186,151.67 in attorney fees, which was 33 percent of the common fund. They expended 458.3 hours of time valued at $324,644. Accordingly, counsel for Madzounian recovered attorney fees 3.34 times greater than the lodestar value of their labor.

There is some dispute about when Class Counsel in this action became aware of the *Madzounian* action and settlement. The record reveals that in July 2011—prior to the October 2011 filing of the Second Amended Complaint adding Cariaga as a plaintiff— counsel for Wells Fargo sent a letter to Class Counsel explaining that Wells Fargo had recently entered into a class action settlement that was in the process of being documented, which included "all former Wells Fargo employees employed in California who had at least a one-day gap between their termination date and final check date." Although the letter did not name the *Madzounian* action, Wells Fargo's August 2011 case management statement expressly named *Madzounian* as a related case. Class Counsel maintains that it did not learn of the class period—which ended less than one month before Cariaga's termination—until June 2012, when Nguyen received a copy of the *Madzounian* class notice.

## D.     Wells Fargo's Demurrer, Plaintiffs' Discovery Motions, and the Mediations

Three years of litigation in the Nguyen/Cariaga case led to pleading challenges, numerous discovery motions, and two mediations. In November 2011, Wells Fargo demurred to class allegations made on behalf of Subclasses I through IV in the Second Amended Complaint. This demurrer did not challenge the class or the waiting time penalty claim that ultimately settled.

In April 2012, plaintiffs filed three motions to compel. None of the discovery requests at issue was related to untimely payment of wages or pertained to Subclass VI,

4

which was not added until the plaintiffs filed the Fourth Amended Complaint in September 2012. The record is silent on the outcome of these motions.

In March 2013, the parties participated in an unsuccessful mediation. In September 2013, plaintiffs filed three more motions to compel. The parties subsequently stipulated to take those three discovery motions off calendar so that the parties would have additional time to meet and confer. In mid-November plaintiffs re-filed the same three motions to compel. A significant portion of the discovery requests at issue pertained to claims that were ultimately dismissed The case settled before the court had an opportunity to rule on these motions.

On November 20, 2013, the parties participated in a second mediation, which was successful.

### E. The Settlement

During the second mediation the parties settled the claim for failure to pay wages timely upon termination under Labor Code section 203 and the derivative UCL and PAGA claims. The other class claims were dismissed without prejudice. The only class that settled was a redefined Subclass VI, consisting of approximately 4,000 members: "individuals whose employment with Wells Fargo in California terminated on or after January 19, 2011, but on or before December 31, 2011 (the 'Class Period'), who terminated from an active status at Wells Fargo and who had at least a one-day gap between their 'termination date' and 'check issuance date' according to Wells Fargo's records." This Class Period immediately follows the *Madzounian* class period ending on January 18, 2011.

The parties agreed to a fund of $400,000 for the settling class. The parties also agreed that Wells Fargo would separately set-aside $600,000 for attorney fees, litigation expenses, and costs, and that the court would decide Class Counsel's award. The $600,000 set-aside was not part of the $400,000 settlement fund. Wells Fargo insisted and stipulated that no portion of the $600,000 would go to the settling class and that any funds remaining after the court's award would revert to Wells Fargo.

5

Approximately one-quarter of the class participated in the settlement, resulting in a net recovery of $368 for each participating class member. Class Counsel maintains that this per member net recovery is approximately $100 more than the per member net recovery of class members who participated in the *Madzounian* settlement.

The court granted final approval of the class action settlement and entered judgment on April 2, 2014.

**F.     The Motion for Attorney Fees and the Order Awarding Fees**

Class Counsel filed a motion for attorney fees, litigation expenses, and costs in February 2014, seeking an award of $584,055.46 in attorney fees and $15,944.54 for litigation expenses and costs--the full $600,000 set aside by Wells Fargo pursuant to the terms of the settlement. Class Counsel presented multiple bases of support for a $600,000 award. First, Class Counsel contended that the 1,120 hours expended on the action, multiplied by a reasonable hourly rate of $675, yielded a lodestar value, without any multiplier, of $743,628–over $150,000 more than the fees requested. Class Counsel also maintained that, even if only the 458 hours expended by counsel in *Madzounian* were approved by the court, multiplied by the average hourly rate of $663,[2] adjusted by a multiplier of two (rather than Madzounian 3.34 multiplier), an award of $607,308 would be justified.

Class Counsel's motion was heard on March 20, 2014. The court awarded attorney fees in the amount of $297,700. The court arrived at this sum by multiplying the 458 hours expended by counsel in *Madzounian* by a rate of $650 per hour. The court adopted the $650 hourly rate from an approval Class Counsel had obtained in an unrelated 2012 case. The court did not provide a justification for its use of the *Madzounian* hours except for its comment that Class Counsel suggested the 458 hours as an appropriate measure of labor expended on the settled claim.

---

[2]     This rate was suggested by Class Counsel in its motion for attorneys fees. See footnote 6.

6

The court declined to apply a multiplier. Because the court considered that the $650 hourly rate was already on the "high side," it found that a multiplier was, "to a certain extent," already built in. The court also found that because the settlement was limited to the Labor Code section 203 claim, the case was not complex, and that in light of *Madzounian*, the case was not unique or risky enough to justify a multiplier.

Class Counsel now appeals the $297,700 attorney fee award.

## STANDARD OF REVIEW

We review an award of attorney fees in a class action settlement under an abuse of discretion standard. (*Laffitte v. Robert Half Int'l Inc.* (*Laffitte*) (Oct. 29, 2014, No. B249253) __ Cal.App.4th __ [2014 Cal.App. Lexis 1059], at *8, mod. (Nov. 21, 2014); *Carter v. City of Los Angeles* (2014) 224 Cal.App.4th 808, 819.) "In particular, '[w]ith respect to the *amount* of fees awarded, there is no question our review must be highly deferential to the views of the trial court.' [Citations.]" (*Concepcion v. Amscan Holdings, Inc.* (*Concepcion*) (2014) 223 Cal.App.4th 1309, 1319-20.) This is because "'"[t]he 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong'"—meaning that it abused its discretion. [Citations.]' [Citation.] '"'"'[T]he appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason."'' [Citations.]" [Citation.] . . . We defer to the trial court's discretion "because of its 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.' [Citation.]" [Citation.] [Citation.]" (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1249; accord, *Holguin v. DISH Network LLC* (2014) 229 Cal.App.4th 1310, 1329; *Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 159.) "A decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' [Citation.]" (*Maughan v. Google Tech., Inc.* (2006) 143 Cal.App.4th 1242, 1249-50 (*Maughan*).) The "[f]ees approved by the trial court are presumed to be reasonable, and the objectors must show

7

error in the award." (*Consumer Privacy Cases* (2009) 175 Cal.App.4th 545, 556; see *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1809.)[3]

## DISCUSSION

### A.     The Lodestar Calculation of Attorney Fees

Class Counsel contends that the attorney fee award in this case must be grounded on the number of hours reasonably worked multiplied by the reasonable hourly rate for each lawyer involved—the lodestar figure. Class Counsel maintains that the court failed to make a lodestar calculation, and instead used the percentage of recovery ("POR") approach, or a subjective "smell test," and then did "'whatever it took' in valuing the lodestar to 'fit' the eventual fee award into the trial court's POR valuation." Wells Fargo contends that the court correctly applied the lodestar method.

"'[T]he fee setting inquiry in California ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. "California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award."' [Citations.]" (*Concepcion*, *supra,* 223 Cal.App.4th at p. 1320.) Significantly, the court's "initial calculation requires the court to determine the reasonable, not actual, number of hours expended by counsel entitled to an award of fees. (*Ibid*; see *EnPalm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 774 & fn. 4.) "Thus, class counsel 'are not automatically entitled to all hours they claim in their request for fees. They must prove the hours they sought were reasonable and necessary.' (*El Escorial*

---

[3]     Class Counsel contends that the trial court's exercise of discretion should be reviewed as a question of law because the facts are undisputed, and that questions of law should be reviewed *de novo* when the trial court applies the wrong legal standard. (See *Toshiba America Electronic Components, Inc. v. Superior Court* (*Toshiba*) (2004) 124 Cal.App.4th 762, 768; *Topanga & Victory Partners, LLP v. Toghia* (*Topanga*) (2002) 103 Cal.App.4th 775, 780-781.) As explained below, the facts here are disputed, the court's determination required an exercise of discretion, and the court applied the proper legal standard. Accordingly, Class Counsel's reliance on *Toshiba* and *Topanga* is misplaced.

8

*Owners' Assn. v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337, 1366.) 'The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended.' [Citation.]" (*Ibid*.)

After making the initial lodestar calculation, the court has discretion to increase or decrease that amount based on several factors specific to the case. (*Concepcion*, *supra*, 223 Cal.App.4th at p. 1321.) There is "no hard-and-fast rule limiting the factors that may justify an exercise of judicial discretion to increase or decrease a lodestar calculation" (*Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 834), but factors courts commonly consider include "the novelty and difficulty of the case, the attorneys' skill in presenting the issues, the amount involved and degree of success achieved, the extent to which the case precluded the attorneys from accepting other work and the contingent nature of the work." (*Concepcion*, *supra*, 223 Cal.App.4th at p. 1321.) "The purpose of such adjustment is to fix a fee at the fair market value for the particular action." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132(*Ketchum*).) "Although the court may consider the amount at issue in the litigation, as well as counsel's relative success in achieving the client's litigation objectives in adjusting the lodestar figure, the attorney fee award need not bear any specific relationship to the dollar amount of the recovery." (*Concepcion*, *supra*, 223 Cal.App.4th at p. 1322.)

### 1. The Court's Lodestar Calculation

The court based its lodestar calculation on the 458 hours expended by counsel in *Madzounian*, multiplied by an hourly rate of $650, to establish an award of $297,700.[4]

---

[4]    Class Counsel contends that the court concluded that a lodestar recovery greater than a class recovery was *per se* unreasonable and argues that no rule prohibits a lodestar recovery from exceeding a class recovery. We do not address this argument because there is nothing in the record suggesting that the court concluded that a lodestar recovery greater than the class recovery was *per se* unreasonable. In fact, the court expressly acknowledged that there is no statutory or case law addressing such a *per se* standard.

9

The lodestar valuation must be based on the "reasonable," not actual, hours expended by Class Counsel. (*Concepcion*, *supra*, 223 Cal.App.4th at p. 1320.) Although the court did not expressly say so, we assume that it judged 458 hours to be the reasonable number of hours expended by Class Counsel on this case.[5] Class Counsel objects to the court's substitution of the *Madzounian* hours as the proper measure of the reasonable hours expended instead of using the 1,120 hours claimed. We find no abuse of discretion in the trial court's determination that the number of hours expended in *Madzounian* was a proper measure of the reasonable hours expended by Class Counsel here.[6]

      *a.*     *Comparison of this Action and* Madzounian

Wells Fargo construes this case as a sort of "copy cat" action in which the plaintiffs learned of the *Madzounian* settlement and in a stroke of luck discovered a small lag between the effective date of the *Madzounian* release and the implementation of Wells Fargo's policy change eliminating its exposure for issuance of late post-termination paychecks. According to Wells Fargo, Class Counsel then searched for and found a plaintiff whose employment terminated after the date of the *Madzounian* release and amended the complaint to add this second plaintiff. In contrast, Class Counsel construes this action as hard fought, fraught with motion practice, and independent of

---

The court merely stated that it had never seen a fee request that was 150 percent of what the class would be receiving and that the request struck the court as unusual.

[5]     While Class Counsel requested an hourly rate of $675, it does not challenge the court's use of an hourly rate of $650.

[6]     Wells Fargo contends that Class Counsel suggested that the trial court award the lodestar based on the 458 *Madzounian* hours and that Class Counsel should be equitably estopped by the doctrine of "invited error" from asserting the court's reliance on the *Madzounian* hours as a ground for reversal on appeal. In its motion, Class Counsel stated, "[i]f just the 458 hours (the number in *Madzounian*) are approved for Class Counsel and a multiplier of just 2 (not *Madzounian's* 3.34) is applied, at the average rate of $663, the lodestar is $607,308, which is above the $584,055.46 being sought." We do not think that by this statement Class Counsel was actually proposing that its attorney fee award be based on the *Madzounian* hours, especially without a multiplier. Thus, Class Counsel's use of the *Madzounian* hours does not rise to the level of invited error.

10

*Madzounian*. Class Counsel maintains that it did not learn of the *Madzounian* class period until June 2012.[7]

Although the record does not reflect that the Court's reliance on the *Madzounian* hours was based on the timing of Class Counsel's knowledge of *Madzounian* or the *Madzounian* settlement and class period, the determination of this factual dispute was for the trial court. Regardless, Class Counsel can hardly dispute that *Madzounian* paved the way for the settlement in this case.

Indeed, the similarities between this case and *Madzounian* are striking. In particular, except for a different class period, the settling class in *Madzounian* is essentially identical to the only settling class in this case. In *Madzounian*, the class consisted of "all former Wells Fargo employees employed in California with a 'termination date' from May 21, 2008 through January 18, 2011, who had at least a one-day gap between their 'termination date' and 'check-issuance date' according to Wells Fargo's records." The settling class here is defined as "individuals whose employment with Wells Fargo in California terminated on or after January 19, 2011, but on or before December 31, 2011 (the 'Class Period'), who terminated from an active status at Wells Fargo and who had at least a one-day gap between their 'termination date' and 'check issuance date' according to Wells Fargo's records."

Class Counsel maintains that *Madzounian* is so different from this case that any comparison of the two is inappropriate. We disagree. Class Counsel's attempt to distinguish the number of contested motions in this case compared to *Madzounian* is insufficient to render comparison of the two an abuse of discretion. In November 2011,

---

[7]     The record reveals that class counsel Allan Shenoi stated in a declaration that his firm did not find out about the *Madzounian* action until June 2012, nine months after Cariaga had been added to the action. However, after Wells Fargo presented documents indicating that Mr. Shenoi and his firm had, indeed, been informed of the *Madzounian* action and settlement as early as July 2011, before Cariaga had been added to the action, Mr. Shenoi filed an amended declaration removing statements that he did not learn about the *Madzounian* action until June 2012 and instead stating that he did not learn of the *Madzounian* class period until that time.

11

Wells Fargo filed a demurrer to the Second Amended Complaint. The class that ultimately settled was not alleged in that complaint. In April 2012, plaintiffs filed three motions to compel. The subject matter and arguments of these three motions overlapped significantly, and none pertained to the settling class. In September 2013, plaintiffs filed three more motions to compel. Shortly afterward, the parties stipulated to take those motions off calendar, to be re-filed after the parties had additional time to meet and confer. Plaintiffs then re-filed the same three motions to compel in mid-November 2013. Those motions also overlapped significantly with one another, and a significant portion of the discovery requests at issue pertained to claims that ultimately were dismissed The case settled before the court ruled on these motions.

We do not find Class Counsel's reliance on the number of motions filed as a distinguishing feature to be persuasive. The demurrer pertained only to claims which were later voluntarily dismissed, and the plaintiffs' discovery motions were redundant and only partially pertained to the claim that ultimately prevailed.

Class Counsel further contends that the result achieved in this case is incomparable to the result in *Madzounian*. We disagree. First, even assuming that the actual recovery of $368 for each settling class member in this case is $100 more than the average recovery for each participating *Madzounian* class member, as Class Counsel contends, that difference does not render comparison of *Madzounian* and this case an abuse of discretion. Second, Class Counsel maintains that Wells Fargo ceased its allegedly unlawful conduct as a result of this action and that, as a result, a higher fee award is justified. Class Counsel rests its argument solely on the correlation in time between Wells Fargo's cessation of conduct and prosecution of this action. But this temporal correlation is not dispositive. Wells Fargo contends that *Madzounian* was the catalyst for Wells Fargo's policy change, although the evidence–a single sentence in a declaration by Wells Fargo's counsel–is slight. Regardless of the admissibility of this evidence or the weight the trial court gave it, it is clear that Class Counsel did not meet its burden to show that this action, as opposed to *Madzounian*, caused Wells Fargo's policy change.

12

### b. *Adoption of the* Madzounian *Hours*

Class Counsel contends that it was improper for the court to slash 59 percent of Class Counsel's claimed hours expended and adopt the 458 hours used in Madzounian without careful review of Class Counsel's billing documentation of hours expended. The court did not specify the details of its review or the time entries with which it found fault. But it was not required to do so. (*Maughan*, *supra*, 143 Cal.App.4th at p. 1252; see also *Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 625 [(It was not "incumbent upon the trial court to specify each and every item in defendant's memorandum with which the court found fault"]. [8])

Basing an award on hours expended by other counsel is not without precedent. In *Maughan*, this Court found that the trial court had not abused its discretion by reducing a requested attorney fee and cost award of $112,288, based on over 200 hours of labor, to $23,000, based on the estimated 50 hours of labor expended by opposing counsel. (*Maughan*, *supra*, 143 Cal.App.4th at p. 1250-51.) While in *Maughan* the substituted hours were based on hours expended by opposing counsel, we see no reason why a court cannot apply a similar analysis using hours expended by different counsel in a related case with an identical prevailing claim. Class Counsel cites no authority disapproving of such an approach. [9]

---

[8] Class Counsel relies on a nonprecedential case, *Gonzalez v. Southern Wine & Spirits of America Inc.* (9th Cir. 2014) 555 Fed.Appx. 704, in which the Ninth Circuit found the district court's failure to justify its apparently arbitrary 55% reduction in counsel's hours was improper. Even if we were bound by Ninth Circuit decisions construing attorney fee awards under California law, which we are not (see *Chavez*, *supra*, 47 Cal.4th at p. 985, fn.6), *Gonzalez* would not affect our decision. Here, the court did not make an arbitrary percentage reduction in Class Counsel's hours, but rather found the 458 hours from *Madzounian* to be a reasonable number of hours for the lodestar calculation.

[9] Further, while Class Counsel did not propose that the court actually adopt the *Madzounian* hours (see footnote 6, *supra*), it clearly was Class Counsel that introduced

Accordingly, in light of the similarities between the two cases, we do not find that the court abused its discretion in adopting the *Madzounian* hours.

### c. Class Counsel's Limited Success

The court's reduction of Class Counsel's hours from 1120 to 458 is further justified by plaintiff's limited success. In *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970 (*Chavez*) the plaintiff obtained a favorable verdict on only one of his many claims--the remainder having been dismissed or found lacking in merit—and then sought a lodestar award of $870,935, based on a reported 1,850 hours of work, and a multiplier of 2. (*Chavez*, *supra*, 47 Cal.4th at p. 981.) The trial court denied fees altogether. The Supreme Court upheld this decision, holding that "the trial court reasonably could and presumably did conclude that plaintiff's attorney fee request . . . was grossly inflated when considered in light of the single claim on which plaintiff succeeded, the amount of damages awarded on that claim, and the amount of time an attorney might reasonably expect to spend in litigating such a claim." (*Id.* at p. 991.) The award of attorney fees in this case falls comfortably within the court's discretion as approved by *Chavez*.[10]

In cases of limited success, courts apply a two-part inquiry. "The first step asks whether 'the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded.' [Citations.]" (*Environmental Protection Information Center v. Department of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 239, mod. on den. of rehg. (Dec. 15, 2010) (*Environmental Protection Information Center*).) To determine whether claims are related or unrelated, the court must evaluate whether the ""'different claims for relief . . . are based on different facts and legal theories.' [Citation.] If so, they qualify as unrelated claims. Conversely, related claims "will involve a common core of facts or will be based on related legal theories." [Citations.]"

---

the *Madzounian* hours as an alternative standard upon which to base the court's lodestar calculation.

[10]     "If a plaintiff has prevailed on some claims but not others, fees are not awarded for time spent litigating claims unrelated to the successful claims, and the trial court 'should award only that amount of fees that is reasonable in relation to the results obtained.' [Citation]." (*Chavez*, *supra*, 47 Cal.4th at p. 989.)

14

(*Ibid.*) If successful and unsuccessful claims are related, the court must proceed to the second step of the inquiry, which asks whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.' [Citation.] In this step, the court will 'evaluate the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."' [Citation]. . . . 'The court may appropriately reduce the lodestar calculation "if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."'' [Citation]." (*Ibid.*)

Here, the initial Complaint named only Nguyen and alleged causes of action with factual and legal bases unrelated to the Labor Code section 203 claim that settled. The Complaint did allege a cause of action for waiting time penalties, but this claim was based on Wells Fargo's alleged failure to pay plaintiff Nguyen for accrued vacation time, not for untimely payment of final wages. While this cause of action was based on the same Labor Code provision as the settled claim, it was based on different facts and a different application of Labor Code section 203. Cariaga was added to the Second Amended Complaint and was included in the causes of action for waiting time penalties and for failure to furnish timely and accurate wage statements, as well as derivative UCL and PAGA claims. This was the first time the factual and legal bases for the claim that settled were introduced into the litigation. However, plaintiffs did not add Subclass VI until the Fourth Amended Complaint. There is no dispute that Subclass VI is the class that settled, although the definition was revised upon settlement. Thus, the factual and legal bases for the settled claim were not fully a part of the litigation until the filing of the Fourth Amended Complaint.

The court, which raised the issue of limited success, [11] would not have abused its discretion in finding that the Subclass VI claims that ultimately settled—which included

---

[11] The court stated, in part, "if this had been a Labor Code 203 case from the get go, we wouldn't have done hardly any of this. (*Sic.*) This case would have been done."

Labor Code 203 claims and derivative UCL and PAGA claims—were not related to the claims that were dismissed. [12] Therefore, we need not proceed to the second step of the inquiry.

### 2. *The Court's Refusal to Apply a Multiplier*

Class Counsel maintains that the court abused its discretion by not applying a multiplier to the lodestar amount. We disagree. A court is "not *required* to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case." (*Ketchum*, *supra*, 24 Cal.4th at p. 1138.) Further, "the party seeking a fee enhancement bears the burden of proof." (*Ibid.*) The court did not err in finding that Class Counsel did not meet this burden.

The court pointed to several factors justifying its refusal to apply a multiplier. First, the court found that because Class Counsel's $650 hourly rate was already on the "high side" any multiplier was, "to a certain extent," already built in. This finding was proper. When determining the enhancement, a court should not consider factors to the extent they are already encompassed within the lodestar. (*Ketchum*, *supra*, 24 Cal.4th at p. 1138.) The California Supreme Court has noted that the factor of extraordinary skill, often coupled with the difficulty of a legal question and the quality of representation, is commonly reflected in an attorney's hourly rate. (*Id.* at p. 1138-39.) "Thus, a trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation. Otherwise, the fee award will result in unfair double counting and

---

[12]     Class Counsel contends that Wells Fargo's position that Subclass VI shares "all of the same ascertainability problems . . . [as] Subclasses I-IV" is a judicial admission that all plaintiffs' claims are related. This argument is unavailing. That subclasses share similar ascertainability problems--e.g., requiring individual interviews of putative class members does not render the underlying claims factually or legally related.

16

be unreasonable." (*Id.* at p. 1139.) Accordingly, the court did not err in finding that the multiplier was to some extent built into the $650 hourly rate.

Additionally, the court found that the case was not risky or unique. While there likely was risk associated with this case at the outset, all of the potentially risky claims were ultimately abandoned. The only class claim that settled was the same Labor Code section 203 claim that settled in *Madzounian*. In light of the extreme similarity between these claims, and the conflicting evidence of when Class Counsel learned of *Madzounian* and the specific dates of its settlement class, the trial court did not abuse its discretion in finding that this case was not risky or unique.

The court also found that the case was not particularly complex. Class Counsel again disagrees, contending that the complexity of this case justifies a higher award. Class Counsel primarily bases this argument on its battle with Wells Fargo over ascertainability of Subclass VI, the Labor Code section 203 class. Class Counsel argues that it was required to propound additional discovery and file additional discovery motions because Wells Fargo maintained, up to the point of settlement, that it could not ascertain Subclass VI. However, the record reveals that the definitions of Subclass VI and the final settlement class differed in significant respects. Subclass VI consisted of "all Wells Fargo former California employees whose last date of employment was after January 18, 2011 and were not timely paid all final wages." The settlement class consists of "individuals whose employment with Wells Fargo in California terminated on or after January 19, 2011, but on or before December 31, 2011 (the 'Class Period'), who terminated from an active status at Wells Fargo and who had at least a one-day gap between their 'termination date' and 'check issuance date' according to Wells Fargo's records."

Class Counsel downplays the differences, emphasizing that the settlement class definition merely defined the term "timely" and added a time limitation. But the replacement of the nebulous term "timely" with the defined one-day gap between termination date and check issuance date contributes dramatically to the subclass's ascertainability. Further, this settlement class definition was available to Class Counsel

17

as of the December 2011 settlement in *Madzounian*, 10 months before plaintiffs filed their Fourth Amended Complaint adding Subclass VI. Accordingly, the court did not err in finding that any complexity could have been reduced if class counsel had narrowed the Labor Code section 203 subclass at the outset. [13]

### 3. *The Court's Percentage of Recovery Cross-Check*

Class Counsel contends that the court did not apply the lodestar method at all but instead misconstrued the attorney fees to be part of the common settlement fund and applied a POR approach. We disagree. The record does not reflect that the trial court misconstrued the attorney fees to be part of a common fund or treated it as such. Nor does the record reflect that the court applied the POR approach. Class counsel suggests that the court first developed a POR award based on a subjective "smell test," and then utilized the hours expended in *Madzounian* to justify the award. The record does not bear this out, and in fact reveals that the court's analysis was essentially the other way around. The court explained that under a POR analysis, an award of approximately 33 1/3 percent is common, but the court's award was not based on that percentage. Instead, it utilized the hours from *Madzounian* as a "guidepost" and multiplied those hours by an hourly fee of $650 per hour. This is a lodestar calculation. The court then cross-checked this award using a contingency fee calculation based on the class fund and found that the award was equivalent to a 75 percent contingency fee.

Courts routinely cross-check fee awards using similar methods. (*Apple Computer, Inc. v. Superior Court* (2005) 126 Cal.App.4th 1253, 1270.) Indeed, it is a common and

---

[13] Class Counsel's reliance on *Thayer v. Wells Fargo Bank*, *supra*, 92 Cal.App.4th at p. 839 (*Thayer*), is misplaced. While the *Thayer* court acknowledged that "[c]ompensation should not be strictly limited to efforts that were demonstrably productive," and that in at least some cases "a certain amount of inefficiency, waste, duplication . . . [is] at least in the beginning, tolerable," the Court also noted that "the unquestioning award of generous fees may encourage duplicative and superfluous litigation and other conduct deserving no such favor." (*Ibid*.) Further, in *Thayer* the Court reversed the trial court's award of a positive multiplier and instead applied a negative multiplier because of unjustified duplication of work. (*Id*. at p. 834, 844.)

acceptable practice for courts to cross-check a lodestar award against the common fund approach (see *Laffitte*, *supra*, __ Cal.App.4th __, 2014 WL 6613057, at *10; *Ramos v. Countrywide Home Loans* (2000) 82 Cal.App.4th 615, 628). Courts may even use the POR approach to adjust the lodestar up or down. (See *Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 39-40.) In *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 64-65, the trial court used percentages of the recovery that a hypothetical enhanced fee would represent to establish a benchmark for determining the enhanced lodestar amount. This Court found no error or abuse of discretion in the court's methodology and held that an attorney fee award of 27.9 percent of the class benefit awarded was "not out of line with class action fee awards calculated using the percentage-of-the-benefit method: 'Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.' [Citation.]" (*Id.* at p. 66, fn. 11.)

We find no error or abuse of discretion in the court's use of the POR approach as a cross-check to its lodestar calculation.

## B.     The Statutory Basis for Attorney Fees

Class Counsel contends that the fee award was in error because it was based on the court's incorrect belief that there was no statutory basis for attorney fees. We disagree. First, the record does not reflect that the court had any misunderstanding about any statutory basis for attorney fees. In fact, contrary to Class Counsel's contention, the record is silent on the matter. In reference to its discussion of Class Counsel's request for an award of 150 percent of the class settlement, the court only stated that there was no specific statutory or case law discussing the *per se* unreasonableness of an attorney fee award.

## C.     Class Counsel's Evidentiary Objections

Class Counsel submitted evidentiary objections to several paragraphs of Wells Fargo's counsels' declarations and to certain attached exhibits. These statements and exhibits referenced statements made in mediation and other settlement communications. In particular, the declarations and exhibits indicate that the parties had agreed to a

19

settlement at the initial mediation but that plaintiffs subsequently reneged. The exhibits also indicate that the parties later came close to a settlement in which Class Counsel agreed to substantially lower attorney fees than the amount it ultimately sought and was awarded. The exhibits—correspondence between counsel—were plainly labeled as privileged settlement communications.

The court remained silent on this evidence and did not expressly rule on any of Class Counsel's objections.[14] When a trial court fails to rule on evidentiary objections, "it is presumed that the objections have been overruled, the trial court considered the evidence in ruling . . . , and the objections are preserved on appeal." (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 531-532 [summary judgment]; see also *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 68 ("[P]laintiff's repeated requests for ruling on their objections may be regarded as preserving their objections on appeal." [motion for attorney fees]).) Assuming the challenged evidence was admitted and considered by the trial court, and that Class Counsel's objections have merit,[15] we find no error.

---

[14] Contrary to Class Counsel's contention, Wells Fargo has not waived its right to challenge evidentiary objections on appeal by failing to respond to them in the trial court. (*Greenspan v. LADT, LLC* (2010) 191 Cal.App.4th 486, 526 ("There is no authority requiring a party in a law-and-motion matter to respond to evidentiary objections in the trial court or waive an appellate challenge to the trial court's rulings.").)

[15] Class Counsel contends that because mediation communications are absolutely privileged under the Mediation Act, the court committed reversible error by admitting them. The cases Class Counsel cites do not support this argument. In *Foxgate Homeowners Association, Inc. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 18, the Supreme Court held that because the trial court sanctioned defendant and its counsel based solely on evidence received in violation of Evidence Code sections 1119 and 1121, which safeguard the confidentiality of mediation proceedings, admission of that evidence materially affected the rights of those sanctioned and required vacating the sanction order. Here, by contrast, Class Counsel has not shown that admission of the challenged evidence has materially affected its rights. In *Rojas v. Superior Court* (2004) 33 Cal.4th 407, 411, the Supreme Court addressed the discoverability of mediation-related materials, not the consequences of their erroneous admission.

20

In reviewing the erroneous admission of evidence, we are guided by Evidence Code section 353, which provides: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be revered, by reason of the erroneous admission of evidence unless . . . [t]he court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice." (Evid. Code, § 353.) "In civil cases, a miscarriage of justice should be declared only when the reviewing court, after an examination of the entire cause, including the evidence, is of the opinion that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Huffman v. Interstate Brands Companies* (2004) 121 Cal.App.4th 679, 692.) "Prejudice from error is never presumed but must be affirmatively demonstrated by the appellant." (*Brokopp v. Ford Motor Co.* (1977) 71 Cal.App.3d 841, 853-54.)

Class counsel seeks reversal solely based on the fact that the trial court overruled the objections, but makes no attempt to connect admission of the challenged evidence to the court's ruling, which does not reference the challenged evidence and appears to be based on completely independent considerations. In short, Class Counsel has not met its burden to show prejudice, let alone a miscarriage of justice.

Accordingly, admission of the challenged evidence does not warrant reversal.[16]

## D.     Attorney Fees on Appeal

Both Class Counsel and Wells Fargo seek their attorney fees on appeal. Class Counsel contends that its attorney fees on appeal should be part of its fee award. Wells Fargo contends that the settlement agreement, when read in the light of the reciprocal fees provision of Civil Code section 1717, entitles it to attorney fees. We disagree and decline to award attorney fees (as distinct from costs) to either party on appeal.

---

[16]     Class Counsel's integration clause argument is a non-starter. As Wells Fargo points out, the contested evidence was not offered to vary the terms of the parties' agreement, and so there is no parol evidence issue.

21

Class Counsel obviously cannot accrue additional attorney fees by pursuing an unsuccessful appeal.  Wells Fargo is not entitled to attorney fees because this action is not "on a contract" and the settlement agreement does not provide for recovery of attorney fees and costs "incurred to enforce that contract" within the meaning of section 1717 of the Civil Code.  Citing to *Mitchell Land & Improvement Co. v. Ristorante Ferrantelli, Inc.* (2007) 158 Cal.App.4th 479, 486 (*Mitchell*), Wells Fargo argues that courts "liberally construe 'on a contract' to extend to any action as long as an action 'involves' a contract and one of the parties would be entitled to recover attorney fees under the contract if that party prevails in its lawsuit."  In *Mitchell*, the court addressed the issue of whether an unlawful detainer action is an action upon a contract such that Civil Code section 1717, subdivision (b)(2), precludes an attorney fee award upon its voluntary dismissal.  (*Id.* at p. 482.)  The court held that because the unlawful detainer action at issue was solely based on an alleged breach of a lease covenant, the action was on a contract, barring recovery of attorney fees.  (*Id.* at p. 488, 490.)  Nothing in *Mitchell*, or any other authority cited by Wells Fargo, suggests that the reciprocal fees statute should apply to a class counsel attorney fee award provision in a stipulated class action settlement.

## DISPOSITION

The judgment and order are affirmed.  Wells Fargo is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:


EPSTEIN, P. J.


MANELLA, J.


22