Filed 12/14/20 NHP/PMB Burbank Medical etc. v. Premiere Medical etc. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| NHP/PMB BURBANK MEDICAL PLAZA I, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PREMIERE MEDICAL CENTER OF BURBANK, INC. et al.,<br><br>    Defendants and Respondents. | B299841<br><br>(Los Angeles County Super. Ct. No. BC604193) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Curtis A. Kin, Judge. Affirmed as modified.

Mann & Zarpas and Lloyd S. Mann for Plaintiff and Appellant.

Roger H. Stetson; Freund Legal, Jonathan D. Freund, Craig A. Huber; Quinn Emanuel Urquhart & Sullivan, Christopher Tayback; Eversheds Sutherland (US) and Ian S. Shelton for Defendants and Respondents Premiere Medical Center of Burbank, Inc. and Michael D. Marsh.

NHP/PMB Burbank Medical Plaza I LLC (NHP) appeals a postjudgment order awarding its former tenants, Premiere Medical Center of Burbank, Inc. and Dr. Michael D. Marsh (collectively Premiere), $988,539 in attorney fees as the prevailing party in this commercial unlawful detainer action after the initial judgment in favor of NHP was reversed on appeal. NHP primarily contends Premiere failed to demonstrate the fees were incurred in the unlawful detainer action and not in the parties' related actions. It also argues an award of nearly $1 million in attorney fees for this unlawful detainer action was patently unreasonable and sums were included for nonexistent or duplicative work. We agree the fee award included one improper item, strike the amount awarded for it, and affirm the postjudgment order as modified.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Unlawful Detainer Trial*
   a. *The lease and Premiere's failure to pay rent*

Premiere leased office space in Burbank Medical Plaza, located across the street from Providence St. Joseph Hospital in Burbank. The initial lease agreement, signed by Dr. Marsh on behalf of Premiere Medical Center, identified suite 300 as the subject of the lease. Subsequent lease amendments added suites 355 and 325 to the lease. Each suite contained separate rental obligations and lease expiration dates.[1]

---

[1] Our factual summary borrows from our prior opinion in this action. (See *NHP/PMB Burbank Medical Plaza I, LLC v. Premiere Medical Center of Burbank, Inc.* (as mod. Dec. 19, 2018, B284625) [nonpub. opn.].)

2

In August 2014 Premiere elected not to exercise its option to extend the term of the lease to suite 325, although it continued to do business in that suite with NHP's consent as a holdover (month-to-month) tenant after the lease term expired on August 31, 2014. By October 2015 Premiere had stopped paying the holdover (monthly) rent due for suite 325 and, according to NHP, soon thereafter stopped paying rent on all three suites.

On October 6, 2015 Premiere moved its equipment and employees out of suite 325 and informed NHP it was surrendering the space. On October 9, 2015 NHP's agent signed a return-of-premises form confirming suite 325 had been returned to NHP in accordance with paragraph 5.7.2 of the lease, which required the tenant to return the premises in as good condition as it had received them, subject only to ordinary wear and tear. After its approval of Premiere's return of suite 325, NHP stopped charging Premiere rent for that suite.

b. *NHP's three-day notices to quit or pay rent*

On November 24, 2015 NHP served on Premiere four separate three-day notices to quit or pay rent pursuant to Code of Civil Procedure section 1161.[2] Instead of identifying the rental amounts due by suite number, each notice defined "the premises" as "suites 300, 325 and 355" collectively and sought an aggregate amount of rent for all three suites.[3]

---

[2] Statutory references are to this code unless otherwise stated.

[3] The four notices to quit differed from each other only in the category of rent sought for the suites: (1) base rent under the lease; (2) base rent as a holdover tenant; (3) operating expenses, included as rent under the lease; and (4) late charges. Each notice stated it was issued pursuant to section 1161.1 and

### c. *NHP's unlawful detainer complaint and the court's entry of judgment for NHP*

On December 14, 2015 NHP filed the instant unlawful detainer action seeking possession of all three suites and the rental amounts and late charges identified in each of the notices to quit. In response Premiere argued, among other things, NHP's notices to quit were defective: More than half the rent identified in the notices included rental amounts for suite 325, which Premiere had already surrendered. While those rents may be recoverable in a breach of lease action, Premiere asserted, they were not properly included in the notices to quit or recoverable in unlawful detainer. In light of the defects in the notices, Premiere argued, NHP could not prevail in unlawful detainer.

NHP argued the notices to quit were valid because Premiere had never fully surrendered suite 325: Due to the configuration of the suites, Premiere had continued to use suite 325 to access suite 300, making the notices to quit, which included unpaid rent for that suite, legally proper.

Following an eight-day court trial that spanned a four-month period from November 2016 through February 2017, the court found in favor of NHP and awarded it possession of all three suites and incidental damages in the amount of $1,141,074.60.[4] In its written statement of decision the court

---

represented the landlord's "good faith and reasonable estimate" of the amounts due and owing.

[4]    The court's award was comprised of $373,592.68 in rental amounts (inclusive of operating expenses and late charges) due and owing, as identified in NHP's notices to quit, plus $624,207.97 in holdover damages, $53,121.16 in prejudgment interest and $90,152.79 in attorney fees and costs.

4

concluded, "[T]he three-day notices, and the charges related to Suite 325 on those notices, were proper by virtue of the fact that [Premiere], as of the date the Notices were served, as of the date the unlawful detainer was filed, and, in fact, up to and including when this action was tried, still had 'constructive possession' over Suite 325, and, were in essence, interfering with the Plaintiff's possession of Suite 325 thus making three-day notices and an unlawful detainer action, related to Suite 325, both proper and necessary." (*NHP/PMB Burbank Medical Plaza I, LLC v. Premiere Medical Center of Burbank, Inc.* (as mod. Dec. 19, 2018, B284625) [nonpub. opn.], at p. 10.)

   2. *Postjudgment Proceedings*

      a. *Premiere's motion to vacate the judgment*

On July 11, 2017 Premiere moved pursuant to section 473 or the court's inherent authority to vacate the judgment based on intrinsic fraud. Premiere argued public records it had only recently obtained proved Stephen King, the president of NHP's managing agent, had testified falsely at trial that Premiere had interfered with NHP's ability to rent suite 325. The court denied Premiere's motion, finding Premiere had not been diligent in filing its motion and, in any event, King had testified truthfully to the best of his knowledge. The court concluded Premiere had not carried its burden to demonstrate intrinsic fraud.

      b. *Premiere's notice of appeal, its petition for writ of supersedeas and reversal of judgment on appeal*

Premiere filed a timely notice of appeal directed to both the judgment and the postjudgment order denying its motion to vacate.

On August 4, 2017 Premiere petitioned for a writ of supersedeas to stay execution of the judgment pending appeal.

5

Following briefing, on September 21, 2017 we ordered the part of the judgment awarding NHP possession of the premises stayed pending disposition of the appeal on condition that Premiere make timely rental payments for suites 325 and 300.[5]

On November 20, 2018 we reversed the unlawful detainer judgment, concluding the notices to quit were defective because they did not provide reasonable estimates of the amounts due on the occupied suites (suites 300 and 355). We rejected the trial court's ruling Premiere had remained in constructive possession of suite 325 despite its surrender of the premises, holding the court's finding that Premiere had interfered with NHP's repossession of suite 325 in a manner tantamount to a holding over was not supported by substantial evidence. (*NHP/PMB Burbank Medical Plaza I, LLC v. Premiere Medical Center of Burbank, Inc.*, *supra*, B284625 at pp. 20-23.) We did not reach Premiere's alternative contention the trial court had erred in denying its motion to vacate the judgment. (*Id.* at p. 26, fn. 15.)[6]

---

[5] The parties agreed Premiere no longer occupied suite 355.

[6] NHP's petition for review in the Supreme Court was denied. (*NHP/PMB Burbank Medical Plaza I, LLC v. Premiere Medical Center of Burbank, Inc.* (Jan. 30, 2019, S253265).)

3. *Related Cases Between the Parties*

In addition to the instant unlawful detainer action, the parties have sued and countersued each other in three separate actions: In November 2015 Premiere sued NHP alleging 13 causes of action arising from its tenancy (Super. Ct. L.A. County, Case No. EC064632) (the "Providence" action); in August 2016 NHP sued Mark Anten, Premiere's personal guarantor under the lease (Super. Ct. L.A. County, Case No. EC065534); and in March 2017 NHP sued Premiere for all damages related to breach of lease not covered by the unlawful detainer action (Super. Ct. L.A. County, Case No. EC066331). The superior court determined all four cases were related. According to NHP, the related actions were stayed pending resolution of the appeal of the unlawful detainer judgment.

Following our decision on appeal and issuance of the remittitur on January 21, 2019, Premiere filed peremptory challenges and motions for recusal (§§ 170.6, 170.1, subd. (a)(6)(A)(i)) directed to Judge Ralph C. Hofer, the presiding judge in all four cases. On February 15, 2019, after the successful peremptory challenge in the unlawful detainer action, Judge Hofer recused himself from the other related cases, finding it would be in the interest of justice for the same bench officer to hear all four matters. All four cases were reassigned to Judge Curtis A. Kin.

4. *Premiere's Motion for Attorney Fees Pursuant to Lease*

On March 11, 2019 Premiere moved pursuant to section 12.3 of the lease agreement to recover $988,539 in attorney fees as the prevailing party in the unlawful detainer

7

action.[7]  Specifically, Premiere sought $486,662 in attorney fees incurred by its counsel Freund Legal; $478,945 in fees incurred by Quinn Emanuel Urquhart & Sullivan (Quinn Emanuel), which represented Premiere as cocounsel with Freund Legal in the postjudgment and appellate proceedings;  and $22,932 in attorney fees incurred by Eversheds Sutherland, which represented Premiere after Ian Shelton, formerly of Quinn Emanuel, joined Eversheds Sutherland and continued to oversee the unlawful detainer action for Premiere following our remittitur.

          c. *Premiere's moving papers*

Jonathan D. Freund, the named partner of Freund Legal and the firm's billing partner, stated in his declaration supporting Premiere's motion that his hourly rate for Premiere was $700, which was "on the lower end of my hourly rate for clients; but given the longstanding relationship with Dr. Marsh, I have agreed to this rate."  Freund worked on the case with firm partner Craig A. Huber, whose hourly billing rate was $625, and the firm's associate, Jugpreet S. Mann, whose hourly rate was $225.  According to Freund, Premiere had made it clear the unlawful detainer defense was "essentially a bet-the-business-

---

[7]     Section 12.3 of the lease provides in part, "In any proceeding . . . involving the prosecution or defense of an unlawful detainer action and/or breach of this Lease, the prevailing party shall be entitled to recover in addition to all other items of recovery permitted by law, actual attorney's fees and all litigation-related costs (including expert witness fees) incurred; however, no attorneys' fees shall be recoverable with respect to any other claim, tort or otherwise, in any proceeding involving this Lease."

8

case in that, were Premiere to lose, it would be unable to continue as an ongoing business enterprise. If Premiere were evicted, it would have no space from which [to] perform medical services, and the liabilities from an adverse judgment would prove fatal to the business. Consequently, I staffed the case with myself and my most seasoned colleague, Mr. Huber, as well as a younger associate to handle the less important issues. And given the importance of the matter to Premiere, I was involved in all of the pleadings and submissions. Mr. Huber was also primarily in charge of handling the day-to-day aspects of the case and attended most of the court hearings; but he too had his hands on all of the filings, correspondence, conducted much of the legal research, and prepared the case for trial. There was no duplication of effort on the handling of this case, but there was more than one attorney involved in each task. Again, the magnitude of the consequences from an adverse judgment were too great to not have all hands on deck."

Freund stated, "Because of the Firm's longstanding relationship with Premiere, we did not always submit monthly billing statements to Premiere. Instead, we used general billing practices directed to the particular matters on which we were working. Each attorney working on this case kept track of [his] time spent on categories of specific tasks on a daily basis and formed the basis for billings to the client." Based on this information, Freund prepared (and included within his declaration) three "true and accurate" summaries of work performed and the time expended by Freund, Huber and

Jugpreet Mann[8] "in this case from inception through this motion." Each summary was organized by category of legal work—prelitigation, litigation, settlement efforts, discovery, trial preparation, trial and posttrial/appeal—and each category contained brief descriptions of work performed under that category. For example, in Freund's billing summary under the category "trial preparation," the description read, "Trial preparation and support, including witnesses (Anten, Marsh, Kim, King) and exhibit preparations and witness examinations; prepare opening statement." In the separate column for total time spent, Freund identified 30 hours. The summaries did not include any dates.

Freund stated he had spent a total of 282 hours (at $700/hour) on the unlawful detainer case for a total of $197,400; Huber spent 427 hours (at $625/hour) for a total of $266,875; and Jugpreet Mann spent 99.5 hours (at $225/hour) for a total of $22,387.50. Freund stated each summary "only includes work on this case, not the other matters between my clients and the Plaintiff, or any other matters."

In his declaration supporting the fee motion, Shelton stated his former firm, Quinn Emanuel, associated in as cocounsel with Freund Legal in the unlawful detainer action in spring 2017 after the superior court had issued its statement of decision. Shelton and his former colleague, Quinn Emanuel partner John D'Amato, worked on all postjudgment proceedings, including those involving Premiere's motion for stay of execution of judgment, the

---

[8]     Because Jugpreet Mann (Premiere's counsel) and Lloyd Mann (NHP's counsel) share the same surname, we sometimes refer to them by their first and last names for clarity.

10

motion to vacate the judgment, the petition for writ of supersedeas, the appeal, the petition for rehearing following the appellate decision (resulting in a modification of the appellate opinion without a change in judgment) and NHP's petition for review in the Supreme Court. Later, after Shelton left Quinn Emanuel in January 2019 for Eversheds Sutherland in Austin, Texas, he continued to oversee the litigation on behalf of Premiere. Shelton stated D'Amato's hourly rate was $700 and D'Amato spent a total of 196.8 hours (for a total of $137,760); Shelton's hourly billing rate was $650 while at Quinn Emanuel, and he spent a total of 524.9 hours (for a total of $341,185); after he joined Eversheds Sutherland, his hourly billing rate decreased to $490, the prevailing market rate in the Austin region; and he spent a total of 46.8 hours from January 2019 to March 2019 in connection with the motion for attorney fees and costs.

Shelton averred Quinn Emanuel's "regular billing statements and/or time entry tracking and case management software identif[ied] the services provided by each Quinn Emanuel attorney on a day-by-day basis, in tenth of an hour increments"; those time entries were provided to support the motion. Shelton also declared his and D'Amato's hourly billing rates were consistent with prevailing market rates for attorneys of similar skill and expertise in Los Angeles, and his lower hourly billing rate at Eversheds Sutherland reflected the prevailing market rate of comparable firms in Austin, Texas. Shelton also provided a summary of the 46.8 hours of time he spent in connection with the attorney fee motion.

Premiere also submitted excerpts from *National Law Journal* surveys of hourly billing rates of various firms published in 2014 and 2015 to support its assertion the hourly billing rates

of all counsel were well within the 2015 market rates for comparable firms.

In his declaration supporting Premiere's attorney fee motion, Dr. Marsh stated the unlawful detainer case "posed an existential threat to my business and seriously threatened my livelihood. Premiere [Medical] and I were both named defendants. If the $1.14 million monetary portion of the judgment had been enforced, it would have been financially devastating to me and my family." Marsh continued, "At the time judgment was entered on May 19, 2017, there was no other suitable medical office space in the Burbank area that was available for Premiere to lease. If the judgment of possession had been enforced, Premiere would have been evicted from the only medical office space available to Premiere at the time, and Premiere's business—which I spent my life building—would have been destroyed. It was not until October 1, 2018, during the appeal, that Premiere was able to locate alternative office space in Toluca Lake." "Given these enormously high stakes," Marsh explained, he retained the "very best" (and not inexpensive) attorneys to safeguard his practice and his livelihood.

d. *NHP's opposition papers*

In its opposing papers NPH argued nearly $1 million in attorney fees for a routine unlawful detainer action was patently unreasonable and purposely inflated to approximate the amount of damages it anticipated Premiere would be found liable for in the related actions. Most of NHP's opposition was directed to Freund Legal's fees: NHP emphasized that neither Freund nor Huber was experienced in unlawful detainer so as to justify their premium rates. In addition, NHP asserted Freund's "billing summaries," provided in "block form" and in what appeared to be

12

"five hour increments" with no corresponding dates, were insufficient to demonstrate the work performed related to the limited unlawful detainer trial and not to any of the related actions between the parties. NHP also observed much of the evidence produced and obtained in discovery, and for which Premiere sought and obtained attorney fees, had been excluded at trial as irrelevant to the limited issue in the unlawful detainer action.

In addition to these general contentions, NHP also advanced a number of specific objections: (1) the billing summaries reflected duplicative billing; (2) Freund Legal identified hours spent on "phantom" discovery that was never filed; (3) to the extent the discovery billings referred to ex parte applications involving discovery disputes, they were duplicative of other entries in the "litigation" category; (4) Freund Legal identified hours spent on "prelitigation" matters before the unlawful detainer action was even filed, suggesting those hours were unrelated to the unlawful detainer action; (5) 77 hours (12 hours by Freund; 35 hours by Huber and 30 hours by Mann) drafting the "nominal" written discovery in this action was unreasonable; and (6) 38 hours spent by Freund Legal and Quinn Emanuel on a "meritless" motion to vacate and an additional 30 hours spent on the 10-page reply in support of that motion were excessive and unreasonable. NHP also claimed Freund lacked personal knowledge of the work of his junior colleagues.

e. *Premiere's reply*

In reply Huber attested he and Freund collaborated throughout the case and Freund, as the billing partner, was informed of all work he and Jugpreet Mann performed on behalf of Premiere. Like Freund, Huber averred that none of the

13

work/hours summaries submitted in support of the motion reflected duplicative billing, but rather represented a reasonable division of labor among attorneys in a case where their client's professional livelihood was at stake. Huber also explained many of the discovery-related motions NHP challenged in its opposition papers took the form of ex parte applications in this unlawful detainer action. He attached copies of a draft motion to compel King's deposition and two ex parte applications to continue trial based on NHP's repeated failures to respond to discovery requests and produce King for his deposition. Huber also asserted that all entries in the summaries reflected work performed in the unlawful detainer action and not in any other action.

        f. *The trial court's ruling*

The trial court granted Premiere's request for attorney fees in full. The court stated it had "reviewed and considered the declarations of counsel concerning the need for and descriptions of the work they did and the court's view of what was a reasonable number of hours that should have been spent. [Citation.] In this regard, the Court notes that . . . this was a hard-fought, heavily litigated dispute over commercial properties involving, among other things, a novel theory of possession in the unlawful detainer context and witnesses with apparent credibility issues. That skillful plaintiff's counsel managed to persuade the trial court to make findings for which the reviewing court found no substantial evidence underscores the necessity for defendants to have expended the number of hours they did at trial with multiple experienced attorneys. As a corollary, defendants' success in convincing the Court of Appeal to reverse the trier of fact under the very deferential substantial evidence

14

standard also suggests the reasonableness of the hours spent by highly skilled defense counsel to obtain the relatively uncommon post-trial result that they did." The court expressly found the hourly rates of all attorneys reasonable and consistent with the prevailing rates for similar counsel in the relevant legal market.

The court also rejected all of NHP's specific objections relating to alleged duplicative or unnecessary work, finding the work performed and hours spent reasonable in light of the "existential threat" the action posed to Premiere's business. The court credited counsel's assertions the work identified was performed in the instant action and not in connection with the related lawsuits between the parties. Although the court described Freund Legal's work/hours summaries as "lack[ing] a certain level of detail concerning when and how much time was spent on any particular litigation activity," it found the summaries, along with the accompanying declarations, legally adequate to support the motion and NHP's objections to them unpersuasive.[9]

NHP filed a timely notice of appeal from the court's postjudgment order.

---

[9] The court rejected Dr. Marsh's request for $171,246 in restitution for lost investment Dr. Marsh claimed to have suffered after he was forced to borrow against his life insurance policies to collateralize the appeal bond. It also awarded Premiere $7,513.73 in litigation-related expenses, $8,095.05 in trial court costs and $30,425 in appellate costs and prejudgment interest. Neither the restitution order nor any of the cost awards is at issue in this appeal.

15

# DISCUSSION

### 1. *Governing Law and Standard of Review*

California follows what is commonly referred to as the American rule, requiring each party to a lawsuit to bear its own attorney fees unless recovery of attorney fees is expressly authorized by statute or contract. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751; *Tract 19051 Homeowners Assn. v. Kemp* (2015) 60 Cal.4th 1135, 1142; see § 1021 ["[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties"].)

A party seeking attorney fees pursuant to a fee shifting provision in a contract must demonstrate the fees incurred were reasonable. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM Group*); see Civ. Code, § 1717.) That reasonableness determination begins with "the lodestar," "the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group*, at pp. 1094-1095.) "'After the trial court has performed the calculations [of the lodestar], it shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the [Civil Code] section 1717 award so that it is a reasonable figure.'" (*PLCM Group*, at p. 1096.) "''A reduced award might be fully justified by a general observation that an attorney overlitigated a case or submitted a padded bill or that the opposing party has stated valid objections.'''" (*Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24, 38.) "'The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular

16

claims, and whether the hours were reasonably expended.'" (*Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1320 (*Concepcion*); see *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 [trial court must "carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation"].)

When, as here, a contract/lease expressly authorizes the prevailing party in a lawsuit to recover attorney fees and the only dispute is the amount awarded, we review the court's decision for abuse of discretion. (See *PLCM Group*, *supra*, 22 Cal.4th at p. 1095 [trial court has "'wide latitude in determining the amount of an award of attorney's fees'"; "an appellate court will interfere with a determination of reasonable attorney fees 'only where there has been a manifest abuse of discretion'"]; *Mikhaeilpoor v. BMW of North America, LLC* (2020) 48 Cal.App.5th 240, 246 ["'"'[t]he only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion or prejudice influenced the determination'"'"].)

2. *Adequacy of the Documentation for the Fees Requested*

NHP contends Freund's declaration and accompanying "three-page" summary of hours and work performed by all three attorneys, presented in "block form" of "five hours increments," were too brief and too general to justify the nearly $500,000 in attorney fees incurred by Freund Legal on behalf of Premiere. The trial court rejected that argument, correctly observing that detailed time or billing records are not required under California law. (See *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 698-699 (*Syers*) ["[i]t is well established that 'California courts do not require detailed time records, and

17

trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent"]; *Concepcion, supra*, 223 Cal.App.4th at p. 1324 [same]; see also *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 269 ["'[a]n attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records'"].)

Contrary to NHP's contention, listing by broad category the time expended by each attorney, as done in the declarations and summaries Premiere submitted, has been upheld and even recommended, as "'an especially helpful compromise between reporting hours in the aggregate (which is easy to review, but lacks informative detail) and generating a complete line-by-line billing report (which offers great detail, but tends to obscure the forest for the trees).'" (*Syers, supra*, 226 Cal.App.4th at p. 700.)

NHP asserts the work/time summaries approved in *Syers* were acceptable in that case because the judge ruling on the attorney fee motion had presided over the trial and was sufficiently familiar with the case to determine whether the hours documented were reasonable. (See *Syers, supra*, 226 Cal.App.4th at p. 700 ["the trial judge presided over the entire matter and was well able to evaluate whether the time expended by counsel in this case, given its complexity and other factors, was reasonable"].) Here, in contrast, the trial judge was new to the case and lacked any particular insight into the time counsel expended and whether it was reasonable. In these circumstances, NHP asserts, something more than the "block billing" summaries submitted by Premiere was required to enable the court to exercise its informed discretion.

While the deference afforded to the trial court's determination on attorney fee matters is undoubtedly rooted in the insight a trial judge gains in presiding over the case (see *PLCM Group, supra,* 22 Cal.4th at p. 1095 ["'[t]he "experienced trial judge is the best judge of the value of professional services rendered in his court"'"]; *Mikhaeilpoor v. BMW of North America, LLC, supra,* 48 Cal.App.5th at p. 246 [same]), there was nothing inherently improper about the breakdown by categories of work and accompanying attorney declarations Premiere provided to support its motion. (*Syers, supra,* 226 Cal.App.4th at p. 699; see *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1010 ["[t]rial courts retain discretion to penalize block billing when the practice prevents them from discerning which tasks are compensable and which are not[;] [t]he trial court identified no such problem here"].) In fact, more detailed time records were unlikely to have provided the court with any greater insight. (See generally *PLCM Group,* at p. 1098 ["'"[w]e do not want 'a [trial] court, in setting an attorney's fee, [to] become enmeshed in a meticulous analysis of every detailed facet of the professional representation"'"]; *Reynolds v. Ford Motor Co.* (2020) 47 Cal.App.5th 1105, 1117 [same].) Even though he did not preside over trial, the experienced trial judge was well-equipped to consider and evaluate Premiere's fee request based on the evidence—counsel's declarations and descriptions of work—provided. No abuse of discretion occurred.

3. *Use of an Unmodified Lodestar Figure*

NHP asserts the only significant issue in this unlawful detainer action was Premiere's continued possession of suite 325. "[T]he notion that this single novel issue" generated nearly

19

$1 million in attorney fees, NHP argues, is "absurd." According to NHP, we need only consider the large disparity between the $90,000 in fees NHP initially claimed as the prevailing party in the action and the nearly $375,000 in fees allegedly incurred by Freund Legal during prejudgment proceedings to understand the excessive nature of the fee request and award. NHP also observes that, while Premiere's counsel were highly experienced commercial litigators, none offered any expertise in unlawful detainer to warrant the high rates ($700 per hour, and $625 per hour) Freund Legal charged. Moreover, Premiere could have avoided such an exorbitant "legal spend" simply by satisfying NHP's demand for $373,000 in unpaid rent, thereby avoiding eviction, and disputing the amount in the related breach of contract/tort lawsuits.

The trial court considered and rejected each of these arguments, describing the action as a "hard-fought," atypical unlawful detainer action that ultimately resulted in reversal of a $1,141,074 judgment. The court credited Dr. Marsh's explanation the action presented a life-or-death threat to his business and Freund's, Shelton's and Huber's declarations that counsel's work was warranted for a number of reasons, including, as Huber observed, NHP's repeated failures to respond to written discovery and deposition notices to produce the person most knowledgeable (PMK) at NHP. The court also rejected the notion the fees incurred shocked the conscience simply because they were disproportionate to the fees NHP had initially recovered. While it may be helpful to consider such a disparity in determining whether fees are reasonable (see, e.g., *Kevin Q. v. Lauren W.* (2011) 195 Cal.App.4th 633, 645 [trial court did not abuse discretion in considering "the disparity between the fees

20

charged by Kevin's counsel and those charged by Opri" in determining whether fees requested were reasonable]), the court found the comparison unpersuasive, given that the stakes in the proceeding were far greater for Premiere than for NHP. That determination was well within the court's discretion. (Cf. *Concepcion*, *supra*, 223 Cal.App.4th at p. 1321 ["the attorney fee award need not bear any specific relationship to the dollar amount of the recovery"]; *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1251 [same].)

Turning to the appeal and post-appellate proceedings, NHP challenges Premiere's justification for continuing its aggressive defense, emphasizing Premiere had abandoned the premises while the matter was pending on appeal, undermining any notion that the unlawful detainer action continued to pose a significant threat. As Dr. Marsh explained, however, the more than $1 million judgment entered against Premiere remained regardless of Premiere's abandonment of the premises during the appeal. That alone, the trial court reasonably found, justified Premiere's vigorous postjudgment efforts.

The court determined the hourly rates of all counsel were consistent with prevailing rates for similar counsel in the relevant legal market. NHP disagrees, but other than noting its counsel's lower hourly rate has not demonstrated the court's application of an unmodified lodestar based on the evidence Premiere presented was an abuse of its broad discretion.

4. *Fees for Prelitigation Work*

NHP argues Freund Legal billed 25 hours on "prelitigation" matters beginning, according to Freund's declaration, in September 2015. Because NHP did not serve the notices to quit or pay rent until November 2015, it posits that much of the

21

prelitigation work Freund and Huber performed must have related to preparing Premiere's own action against NHP, also filed in November 2015, and not defending the unlawful detainer action. In response, Huber attested the prelitigation work was necessitated by NHP's "harassing" conduct "months before" NHP served its notices to quit or pay rent. Both Huber and Freund declared under penalty of perjury, and the court found, that none of the items described in the parties' summaries related to fees and costs incurred in cases other than the unlawful detainer action. NHP's speculation falls far short of demonstrating an abuse of discretion.

NHP similarly argues Premiere must have billed for discovery that occurred in connection with the Providence action and not the case at bar. To support its position, NHP observes its counsel, Lloyd Mann, declared he had spent only 9.3 hours on discovery in this unlawful detainer matter, compared to Premiere's 77 hours. According to NHP, that significant difference can only be explained if the discovery related to issues other than possession—matters that were deemed irrelevant and excluded at trial after the court granted NHP's motion in limine. NHP also characterizes the discovery by Premiere as minimal, existing mostly, albeit not exclusively, of form discovery requests and a single deposition.[10]

At the threshold, NHP did not identify the excluded evidence or connect any of the fees awarded to it, nor would the

[10] Premiere described the written discovery it propounded as one set of form interrogatories, one set of special interrogatories, one set of requests for admission, two sets of requests for production of documents, and a notice of deposition of the PMK at NHP with accompanying document request.

court's ruling excluding evidence obtained in the unlawful detainer action necessarily compel reversal of those fees. (See *Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 431 ["'[t]o reduce the attorneys' fees of a successful party [simply] because he did not prevail on all his arguments, makes it the attorney, and not the defendant, who pays the costs of enforcing' the plaintiff's rights"].)  In any event, Freund and Huber both declared that all work (including discovery) identified in the summaries was performed in the unlawful detainer action and not in any of the related cases. Faced with conflicting declarations as to what discovery was necessary in this action, the trial court credited Huber and Freund over Mann.  That determination was neither arbitrary nor irrational in a case in which the trial court found Premiere had properly engaged in an aggressive defense based on what was at stake for it in the litigation.

     5. *Fees for "Phantom" Motions or Duplicative Work*

     In Premiere's motion for attorney fees, Freund stated he spent five hours on "pleadings relating to discovery, including the preparation of motion to compel King deposition and produce documents; revise and edit motion and reply papers," and Huber spent 17 hours on "pleadings relating to discovery," including "preparation of motion to compel King deposition and produce documents; attend hearing re same; review responses."  Yet, as NHP observed in its opposition papers, no motion to compel King's deposition was ever filed.  Accordingly, there was no response by NHP to be reviewed, no reply to be filed and no hearing to attend relating to that motion.  To the extent those entries referred to the ex parte applications to continue the trial, which were supported by claims of NHP's failures to respond to

discovery and produce King for deposition, NHP argued, those fees were already identified and recovered in the "litigation" category as motions to continue the trial. Accordingly, NHP asserted, fees for a reply and hearing in connection with a motion to compel were duplicative.

On appeal, NHP argues the trial court missed the point and abused its discretion when it concluded 22 hours of work ($14,125) attributed to discovery, including compelling King's deposition, were "reasonable and justified under the circumstances even if discovery motions were never filed." Either there were no reply papers and no attendance at hearings concerning the unfiled motion to compel, thus those entries were false; or the entries referred to the ex parte applications and were duplicative of other entries for which fees were awarded

Responding to NHP's argument in the trial court, Huber explained, "The work on discovery issues related to the landlord's wholesale refusal to provide timely and complete discovery responses, to produce documents, and to proffer a prepared PMK witness, as well as Premiere's efforts to address the landlord's shortcomings related to the same. These discovery issues were addressed in the two ex parte applications and the draft motion to compel. Those same pleadings and hearings also addressed non-discovery issues. The billings [summaries] submitted by Mr. Freund accurately parse the discovery components of my firm's work from the non-discovery components."

NHP's argument is persuasive. Huber's response—that the ex parte applications encompassed both discovery and non-discovery issues and the fees associated with each subject were parsed to reflect the appropriate category—failed to identify which aspects of the ex parte applications were billed as

24

discovery and which were not. (Cf. *Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1120, fn. 12 [expert's opinion "supported only by a statement telling the jury (in essence), 'Trust me, I'm an expert and it makes sense to me'" was wholly conclusory; court abused its discretion in admitting the expert testimony].) This material omission was fatal to this item of Premiere's request. It was Premiere's burden to demonstrate fees for the challenged 22 hours were incurred, and Huber's conclusory explanation for these seemingly duplicative entries, without more, fell far short. Premiere failed to carry that burden, and the court abused its discretion in ruling otherwise. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 805, 813 [court abused its discretion by awarding an amount of attorney fees not supported by substantial evidence]; see generally *Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 530 [court abuses discretion when it makes finding not supported by substantial evidence].)

6. *Additional Prelitigation Fees*

NHP contends the court awarded fees for certain prelitigation work Premiere had expressly disclaimed. In the prelitigation category of Premiere's fee summary, Freund identified 10 hours for "[f]act investigation and general conferences and correspondence with clients; confer with M. Marsh and Mark Anten and other Premiere employees and personnel; review documents regarding property and space at issue; consult various healthcare specialists." In his supporting declaration Freund explained Premiere was not seeking fees incurred for consultation with healthcare experts despite including that entry in the prelitigation summary: "The leased

25

property was also full of expensive and delicate medical equipment and a blood lab that could easily be contaminated if not handled properly. While no experts were presented at trial, my firm repeatedly consulted healthcare experts to assist in formulating responses to the hyper-aggressive tactics of the landlord plaintiff. The fees for consulting these healthcare professionals are not being sought by Premiere."

NHP contends the only reasonable interpretation from the court's order awarding the full amount of fees for this category is that fees were awarded for consultation with health care experts notwithstanding Freund's disclaimer. However, when read in conjunction with Freund's declaration, it is just as reasonable to conclude Freund had excluded from the hours being claimed time spent consulting healthcare experts. There is nothing inherently improbable about the other listed activities requiring 10 hours of time. Accordingly, indulging every inference in favor of the court's order, as we must, there is no basis to find the court awarded fees for matters Freund had expressly disclaimed.

NHP further contends Freund's 10 hours for prelitigation work/investigation, client correspondence, and reviewing property documents were duplicative of his litigation entry for "[d]evelopment of case analysis, including review pleadings, supporting documents, further consultation with clients, [and] formulat[ion] of case strategy." The court rejected this assertion, and so must we. An unsupported assertion that time billed is duplicative, without more, is insufficient to demonstrate the billing was unreasonable, let alone that the court's order awarding the fees requested was an abuse of its broad discretion. (See *Premiere Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 ["[g]eneral

26

arguments that fees claimed are excessive, duplicative, or unrelated do not suffice"].)

### 7. *Fees Relating to Settlement*

NHP contends the court unreasonably awarded Premiere $25,812.50 in attorney fees for 47.5 hours purportedly spent on settlement and mediation work relating to "a single settlement conference that lasted less than six hours."[11]  In support of this contention, Lloyd Mann stated in his declaration that there were no serious settlement discussions between the parties other than the mediation that would justify the hours spent.

Although, as NHP observes, the court's written ruling did not expressly address this argument, we presume the court impliedly rejected it.  (See *Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1140 ["'"[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown"'"]; *Bui v. Nguyen* (2014) 230 Cal.App.4th 1357, 1377 [in reviewing attorney fee award, appellate court must consider both the express and implied findings of trial court].)  Accordingly, our task is simply to determine whether that rejection was an abuse of the court's broad discretion.  Were the 47.5 hours isolated to attendance at the mediation, as NHP has characterized, we might agree those

---

[11]     According to the evidence submitted in support of Premiere's motion, Freund spent 15 hours on "[s]ettlement discussions, draft and review mediation brief and attend mediation"; Huber spent 20 hours on "[s]ettlement discussions throughout the case with email, telephone and written communications, draft mediation brief and attend mediation." Mann spent 12.5 hours for "[s]ettlement discussions and mediation."

27

hours were excessive.  But Premiere identified much more, including correspondence, drafting of a mediation brief and preparation for a mediation to resolve the case.  The trial court impliedly found the total time spent by three attorneys working on the case reasonable in light of the high stakes for Premiere in the litigation.  That conclusion was well within the court's discretion.

8. *Fees for the Motion To Vacate*

NHP argues the court abused its discretion in awarding $82,807 in attorney fees for "more than 100" hours Premiere spent on a "fruitless motion to vacate" the judgment based on King's alleged perjury at trial, which the trial court denied and we did not reach on appeal.  However, in the trial court NHP argued only that 68 hours spent drafting the motion and reply brief were excessive.  The argument no fees should have been awarded for the motion has been forfeited.  (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 189, 184-185, fn. 1 [it is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal that could have been, but were not, presented to the trial court]; *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592 ["'[a]ppellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider'"].)

On appeal NHP does not directly challenge the number of hours attributed to the moving papers and reply, as it did in the trial court.  Rather, without citation to evidence or additional argument, NHP asserts "[t]he resources spent on this meritless issue" of King's alleged perjury at trial, the subject of the motion to vacate, "were not reasonable."  This unsupported contention,

28

without more, is insufficient to demonstrate the court abused its discretion. (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375 ["[a]n 'assertion [that] is unaccompanied by any citation to the record or any explanation of which fees were unreasonable or duplicative' is insufficient to disturb the trial court's discretionary award of attorney fees"]; *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1248 [same].)

Finally, NHP's general suggestion the court abused its discretion in awarding Premiere fees in connection with a motion it lost in the trial court is also wrong on its merits. (See *Wysinger v. Automobile Club of Southern California*, *supra*, 157 Cal.App.4th at p. 431; *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1303 ["'Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee'"].)

## DISPOSITION

The postjudgment order is modified by striking $14,125 from the amount awarded and is affirmed as modified. Premiere Medical Center of Burbank, Inc. and Dr. Marsh are to recover their costs on appeal.


PERLUSS, P. J.

We concur:


SEGAL, J.              FEUER, J.

29